Willie D. BLAIR, et al.,
Plaintiffs-Appellants,

v.

CITY OF GREENVILLE, et al.,
Defendants-Appellees.

No. 80–3604.

United States Court of Appeals,
Fifth Circuit.
Unit A

July 2, 1981.

Thomas Ray Sims, North Miss. Rural Legal Services, McLemore & Ward, Clell G. Ward, Leslie King, Greenville, Miss., for plaintiffs-appellants.

G. Kenner Ellis, Jr., Greenville, Miss., for defendants-appellees.

Before SKELTON*, Senior Judge, and RUBIN and REAVLEY, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Procedural problems and the inconsistent positions taken by the City in different lawsuits have prevented the black firemen of the City of Greenville, Mississippi, from obtaining a hearing on their charge that the city has discriminated against them in promotion and in terms and conditions of employment. While parts of their claim are barred by res judicata, the plaintiffs have pleaded a tenable cause of action and we, therefore, reverse the dismissal of their suit and remand for further proceedings.

In 1972, Elmer L. Monroe and Melvin Chaney, as representatives of black applicants for positions in the City Fire Department, filed a class action in the Northern District of Mississippi against the city council, the fire department, and several municipal and departmental officials. The complaint alleged that the city did not employ a single black fireman.[1] On November 13, 1972, a consent decree was entered in that suit by Judge Orma R. Smith. The decree included injunctive provisions prohibiting the Fire Department from discriminating in hiring and training applicants or in assigning firemen to firehouses. It was entered in favor of a class designated as "all black persons who have applied for employment with the Greenville Fire Department, but who have not been hired."

In 1979, William Blair and nine other named plaintiffs,[2] as representatives of "all blacks: (a) who were employed and then wrongfully discharged by defendant; and (b) who are presently employed by defendant with limited opportunities *and* (c) who *were refused employment by defendant because of their race*" (emphasis supplied), filed a new class action, alleging, in part, that the Fire Department discriminated against blacks by refusing to treat the plaintiff class equally in hiring, compensation, promotion and working conditions. Although this action was filed in the same district and division as the first suit, it was allotted to a different district judge, Judge

---

* Senior Judge of the United States Court of Claims, sitting by designation.

1. The consent decree, however, indicated, that seven black firemen had been hired shortly before the suit was filed.

2. The other named plaintiffs were Melvin Lipsey, Jimmy L. Nash, Melvin Chaney, Elmer L. Monroe, Melvin Woodward, James L. Henry, Earl Nash, Tyron Wilson and Joan McKinney. Chaney and Monroe were also named plaintiffs in the 1972 complaint.

William C. Keady. In granting the defendants' motion to dismiss, Judge Keady held that the 1972 consent decree barred the new action by principles of res judicata and dismissed the complaint "as a separate proceeding." He noted in the dismissal order, however, that it was "without prejudice to their right to seek enforcement of the existing injunction." No appeal was taken.

Following the suggestion in the dismissal order, the plaintiffs filed a motion in the 1972 suit seeking to hold the defendants in contempt for violations of the consent decree. Judge Smith, who had approved the consent decree, was assigned the motion and, at a status hearing, recognized that the broad 1979 complaint extended beyond the scope of the 1972 consent degree. Because of the scope of the new action, the city took the position, contrary to the one it had apparently taken in its motion to dismiss the 1979 complaint, that the consent decree was limited to hiring and initial assignment policy and did not reach the subjects of the new complaint: discharge, limited employment or promotion opportunities. The city argued that it could not, therefore, be held in contempt, for the complaint did not charge violation of any of the provisions of the consent decree. In response to this argument that the complaint, identical in all significant respects to the 1979 complaint, was *too broad* to support a contempt citation,[3] Judge Smith explicitly stated that the decree would not bar a new complaint alleging discriminatory employment practices not enjoined in the original decree. Judge Smith requested, however, that the parties file a motion to substitute new defendants and requested that various affidavits be filed, but apparently no definitive action has been taken on that contempt motion. Thereafter, Judge Smith assumed senior judge status and the contempt matter was reassigned to another judge, Judge Lyonel Senter. At oral argument before this Court, the parties informed the Court that the motions in the 1972 case were still pending.

The baffled plaintiffs' representatives then went from pillar back to post and, in 1980, filed a new class action. Their complaint was almost identical to the one filed in the 1979 action.[4] This suit was allotted to Judge Keady, who, reasoning that the 1979 and 1980 suits were almost identical, again dismissed the complaint on the same grounds and with the same caveat that he had given in dismissing the 1979 suit. Forewarned that a contempt proceeding would likely not satisfy their concerns, however, the plaintiffs appealed this dismissal.

Only two relatively minor items in the 1972 suit suggest that it involved discrimination against black persons actually employed as firemen rather than those who were merely applicants for employment. At various points, the complaint refers to "employment opportunities *within* the fire department." However, the consent decree says nothing about those opportunities. It does contain a provision prohibiting assignment of new firemen to segregated facilities. This provision apparently was designed to prevent the fire department from assigning newly hired class members to a "black firehouse." The decree contains no other provision that could apply to blacks after their hiring. The complaint filed in 1979 pertains primarily, and the one filed in 1980 pertains exclusively, to discrimination worked after blacks had been hired as firemen.

Nonetheless, the dismissal of the 1979 suit not having been appealed, it is res judicata and bars all claims for discrimina-

---

**3.** At oral argument before this Court, counsel for the defendants, somewhat reluctantly, reverted to his former position that the 1972 consent decree encompasses overall discrimination in the fire department.

**4.** The 1980 complaint excluded Joan McKinney as a named plaintiff and added Eddie Robinson, Alfred Brothers, Cardell Wells, Lee Tollfree, Eddie L. Parker, William Aldridge, Jr., Aruth

[sic] Nash and Willie Spencer as named plaintiffs. Willie Gray was named in the body of the complaint although his name did not appear on the face of the complaint. The drafters of the 1980 complaint, recognizing that the consent decree would bar new allegations of discriminatory hiring practices, deleted reference to those practices from the complaint.

tion voiced in it. Under the doctrine of res judicata, a valid, final judgment, when rendered on the merits, is an absolute bar to a subsequent claim between the same parties, or those in privity, upon the same cause of action pleaded in the prior suit. *See generally* J. W. Moore & T. S. Currier, Moore's Federal Practice 621, *et seq.* (1980). The doctrine does not, however, bar a suit based on acts of the defendant that have occurred subsequent to the final judgment asserted as a bar. *See generally Id.* at 1155. A subsequent wrong constitutes a new cause of action. *See Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) (prior consent judgment in a private antitrust action did not bar similar action based upon the subsequent acts of the defendant); *Exhibitors Poster Exchange, Inc. v. National Screen Service Corp.*, 421 F.2d 1313 (5th Cir. 1970); *Cream Top Creamery v. Dean Milk Co.*, 383 F.2d 358 (6th Cir. 1967).

In 1979, the plaintiff class could assert only those claims that were based on evidence of discrimination occurring before the complaint was heard. The 1979 judgment did not, therefore, bar claims for acts of discrimination that occurred after its entry. Viewing the 1980 complaint in the generous light of notice pleading, it would permit proof of post-1979 discriminatory conduct. By its nature, it alleges acts of discrimination occurring up to the date it was filed. The plaintiffs might also adduce evidence of discrimination, if any exists, occurring between the date the complaint was filed and the trial. In addition, as both judges who have considered these interrelated matters correctly held, if the plaintiffs can prove a violation of the terms of the 1972 consent decree, they are also entitled to relief in that action.

█ It is manifest that the litigants should be spared both the necessity of appearing in two courts to assert these interrelated claims and the problem of trying to reconcile two judges' possibly divergent factual and legal determinations. Fair and efficient judicial administration should be considered. Economy of judicial effort can be achieved by having the problems between the plaintiff class and the city resolved by one judge. Accordingly, to achieve justice under these circumstances, we order that this case be consolidated with the contempt motion in the 1972 case and that both causes be allotted to the same district judge. *See Hamilton v. Morial*, 644 F.2d 351, 354 (5th Cir. 1981).

REVERSED and REMANDED for further proceedings consistent with this opinion.