**Frankie E. WINGFIELD, Appellant,**

v.

**GOODWILL INDUSTRIES, Appellee.**

**No. 80–2098.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 17, 1981.

Decided Dec. 14, 1981.

Samuel I. McHenry, Kansas City, Mo., for appellant.

Gage & Tucker, George P. Coughlin, Kansas City, Mo., appellee.

Before STEPHENSON and McMILLIAN, Circuit Judges, and HANSON,[*] Senior District Judge.

* The Honorable William C. Hanson, United States Senior District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

McMILLIAN, Circuit Judge.

Frankie Wingfield appeals from a judgment entered in the District Court[1] for the Western District of Missouri denying recovery on her claims of discrimination filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981.

For reversal appellant argues that the district court erred in not finding that her employer's legitimate, nondiscriminatory reason for not promoting appellant was a pretext and in not finding that the wrongful denial of promotion was the cause of her refusing to perform a job task which resulted in her termination.[2] For the reasons discussed below, we affirm the judgment of the district court.

## I. BACKGROUND

Appellant, a black female, was hired by the Goodwill Industries of Greater Kansas City, Inc. (Goodwill), on August 8, 1974. Goodwill is a non-profit corporation organized to help both disadvantaged and handicapped persons. Goodwill accepts donations of clothing and other items and then resells them in stores owned and operated by Goodwill. Appellant worked as an order taker in the communications department. Order takers handle telephone calls from prospective donors about donations. Upon receipt of such calls, the order taker relays the information given by the prospective donor to other Goodwill employees who coordinate the pick-up and transfer of the donation to the various Goodwill stores. Order takers also answer the phone in a courteous manner, transcribe the information needed to pick up the donations, and answer any pertinent questions a donor might have regarding the donation. Order takers were also trained to decode a code-a-phone which recorded telephone calls arriving before or after business hours. Although decoding the code-a-phone was not within the order taker's job classification, they were expected to perform the task in the supervisor's absence.

The order takers were directly supervised by the Communications Department Supervisor. The formal duties of the supervisor included supervising the order takers, decoding the code-a-phone, calling persons who were not available for the preceding day's pick-up, answering pick-up calls from donors and any trouble calls or complaints, making sure that truck routes had thirty pick-ups daily, routing the trucks, relieving the PBX operator during breaks and lunch, and otherwise establishing an effective communications department.

All of the employees in the communications department were under the supervision of the Director of Community Development. The Director was responsible for hiring and firing employees, determining which employees should be promoted, and periodically evaluating the work performance of the employees.

When appellant began her employment at Goodwill, Steve Wurtz was the Director of Community Development and Rosalie Fifer, a white female, was the Communications Supervisor. On October 22, 1974, Fifer left Goodwill and, shortly thereafter, Wurtz hired Donna Bush, a white female, to replace Fifer. On February 17, 1975, Bush left Goodwill. Nancy Moreno Davies, who

1. The Honorable Elmo B. Hunter, United States Senior District Judge for the Western District of Missouri. The petition had been referred to the federal magistrate (Hon. Richard H. Ralston) for a report and recommendation pursuant to 28 U.S.C. § 636. The magistrate resolved the allegations adversely to appellant. The district court adopted the magistrate's report and recommendations.

2. When the appeal was filed the parties did not have the benefit of the Supreme Court's decision in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Appellant initially argued that the district court erred in finding that Goodwill had rebutted appellant's *prima facie* case since Goodwill had not produced evidence demonstrating that persons hired for the supervisory position were better qualified than appellant. After *Burdine* appellant filed a supplemental brief changing the focus of her argument from the second to the third stage of the tri-part proceedings set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973).

had since replaced Wurtz as Director of Community Development, then hired Betty Simons, a white female, to replace Bush. Appellant had the most seniority in the communications department at the time both Bush and Simons were hired, but she did not file an application for, or otherwise indicate an interest in, either opening. Both Bush and Simons were hired from outside Goodwill's organization.

On February 27, 1975, appellant was directed to decode the code-a-phone because Betty Simons, the new Communications Supervisor, was absent from the department. Appellant refused to perform the task, stating that it was out of her job classification, and was terminated.

On March 3, 1975, appellant filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that Goodwill had discriminated against her on the basis of race by failing to promote her to the position of Communications Supervisor and instead hiring two inexperienced white females, and by terminating her for refusing to perform a task outside her job classification. The EEOC processed this charge and found reasonable cause to believe that appellant's allegations were true, and on July 6, 1977, issued a right-to-sue letter. Appellant commenced this proceeding on October 28, 1977, complaining that Goodwill had discriminatorily failed to promote her and terminated her on the basis of race, in violation of Title VII of the Civil Rights Act of 1964 and of 42 U.S.C. § 1981.[3]

## II. FAILURE TO PROMOTE

At trial appellant argued that Goodwill had an automatic promotion procedure based on seniority by which the employee with the most seniority in a department would be automatically promoted to an available supervisory position. Mable Talie, a former Goodwill employee,[4] also testified as to the existence of an automatic promotion procedure, and stated that Goodwill employees did not have to file applications for available supervisory positions.

Appellant also testified that she had performed almost all the duties of a communi-

**3.** Goodwill made a pretrial motion to dismiss the complaint on the grounds that it was untimely under 42 U.S.C. § 2000e–5(f)(1) because the complaint was filed 113 days after the right-to-sue letter had been issued. Appellant had filed the letter together with an application to proceed in forma pauperis and for appointment of counsel on August 27, 1977, well within the statutory period. Counsel was appointed on that same date and filed the formal complaint on October 28, 1977. The district court denied the motion relying on the rule set forth in Huston v. General Motors Corp., 477 F.2d 1003 (8th Cir. 1973), that presentation of a request for the appointment of counsel constitutes the bringing of the civil action under Title VII. The district court concluded that the formal complaint had been filed within a reasonable period of time and that Goodwill had not demonstrated any prejudice.

On appeal Goodwill argues that the presentation of a request for the appointment of counsel only tolls the statutory period until counsel is appointed. In support Goodwill argues that the temporary tolling provision is unnecessary in view of the fact that Congress extended the original thirty-day filing period to ninety days in 1972. Goodwill also cites several cases which abandoned the temporary tolling provision after the establishment of the ninety-day period.

We reject Goodwill's argument and reaffirm the principle set forth in Huston v. General Motors Corp., supra, 477 F.2d at 1008, that is, in the specific context of Title VII, the statutory requirement that an action be "brought" within the time period is satisfied by presenting a right-to-sue letter to the court and requesting the appointment of counsel. The court may then specify a reasonable time within which the formal complaint must be filed. E.g., Wrenn v. American Cast Iron Pipe Co., 575 F.2d 544, 546 (5th Cir. 1978). One consequence of the statutory scheme for appointed counsel is that the duty to meet tolling requirements falls on laypersons who may have no knowledge of the legal technicalities. Allowing a reasonable temporary tolling period promotes the purposes of the Act and causes little prejudice to defendants who have received notice of the charges when the plaintiff's grievance was taken to the EEOC.

**4.** On cross-examination Talie stated that she had never worked at the Goodwill office where appellant worked and that she had never worked in the communications department. Talie also stated that she had filed an EEOC charge against Goodwill which was dismissed with prejudice after a settlement was reached between the parties.

cations supervisor. Specifically appellant stated that Wurtz had requested her to perform the supervisor's duties during the period between Fifer's termination and Bush's hiring, and further that she actually performed the supervisor's duties during the period between Bush's termination and Simons' hiring.

Wurtz, the Director of Community Development during most of appellant's employment, testified that he was responsible for rating and reviewing the progress of all employees working in the communications department. Wurtz stated that because he did not directly supervise the order takers, he relied on their supervisor's evaluations, along with his own personal observations, in rating the order takers.

According to the rating form used to evaluate appellant's progress and performance from July 1, 1974, through December 3, 1974 (Defendant's Ex. 1), Wurtz rated appellant's performance in both the "quantity' and "quality' of work as "Significantly Below Average Standards for Industry." Wurtz testified that appellant was not promoted to the position of supervisor because she could not deal effectively with the public or other employees. Wurtz stated that appellant was not diplomatic or well organized, and that he had received complaints concerning her performance. Wurtz testified that appellant's race was not a factor in the determination not to promote her to the supervisory position. Wurtz denied that there was any automatic promotion procedure based on seniority at Goodwill.

With respect to the hiring of Bush, Wurtz testified that when a supervisory position became open at Goodwill, the usual procedure was first to determine whether any of the employees within that particular department were qualified for the position. Wurtz stated that he did this and determined that none of the employees was qualified. According to Wurtz, the personnel department at Goodwill then screened outside applications for the position and presented them to Wurtz. Wurtz testified that after interviewing Bush, he determined that she was best qualified for the position of Communications Supervisor.

Davies, Wurtz's successor as Director of Community Development, testified that before she hired Simons to replace Bush, she reviewed the personnel files of all the employees in the communications department and determined that none of the employees was qualified for the supervisory position. Davies denied that employees were automatically promoted based on seniority. Davies testified that she was looking for someone to fill the supervisory position who was organized, efficient, could work with people, speak to the public, and coordinate activities.

Davies stated that she had received complaints that appellant was surly, bothering dispatchers, and generally "creating havoc." Davies also testified that other than decoding the code-a-phone, she did not recall appellant performing any of the duties of the communications supervisor during the two-week period between Bush's termination and Simons' hiring. Davies stated that the supervisor's duties were performed by Earl Wills, a Goodwill employee, Davies' secretary and Davies herself during that period.

Four documents (Defendant's Ex. 2) containing complaints about appellant's conduct and work performance were also admitted into evidence. The first document was an undated letter from Bush to Wurtz which complained that appellant "has been leaving her work station after being told not to," that appellant "is . . . clearing with Earl Wills and not me after she had been told not to on Jan. 2, 1975," that appellant "left the building saying it was too cold," that "we are still having the problem of [appellant] chewing gum and popping it and our room is small and this [is] bothering other people," that appellant "was ask[ed] not to go to the dispatcher to check address[es] but she still does," and that "I have had a few (not too many) complaints about [appellant's] attitude not only towards the people she works with but also customers."

The second document, entitled "COMPLAINTS REGARDING FRANKIE WINGFIELD COMMUNICATIONS DE-

PARTMENT ORDER TAKER," dated January 2, 1975, states:

> Ms. Wingfield left the building without permission to leave. She left because the heat was off on the first floor and she said she was cold. Diane Wiard, Public Relations Assistant, went down to the order desk with coats to help the ladies keep warm and reported that the cold was not really noticeable unless sitting by the door to the transportation department that is often opened and closed. Diane attempted to speak with Ms. Wingfield but she had already made up her mind to leave. We were also short handed this day because another one of the three order takers was at home sick, [but] this did not seem to affect Ms. Wingfield['s] actions.

This document was signed by Wurtz and Wiard.

The third document, dated January 6, 1975, states:

> Ms. Wingfield has been reminded more than once about chewing gum while on the job taking orders from people in the community. Not only is [it] hard to understand someone chewing and popping gum it is also very annoying when you are sitting next to someone doing this all day. Evelyn Riles, who sits next to Frankie, reported this happening again today.

This document was also signed by Wurtz and Wiard.

The fourth document, dated January 13, 1975, states:

> It was brought to our attention today through the payroll department that Frankie has not been putting in a full day. She has been leaving consistently at 4:15 p. m.

Wurtz testified that he initialed this document.

The district court concluded that based upon the evidence presented at trial, Goodwill did not have an automatic promotion procedure and therefore appellant did not have an absolute right to be promoted simply because of her seniority. *Wingfield v. Goodwill Industries of Greater Kansas City,*

*Inc.,* No. 77 0628 CV W4, slip op. at 4 (W.D.Mo. May 16, 1980). The district court also found that appellant had not qualified for the supervisory position as evidenced by her poor work performance, the complaints made against her, and the observations made by supervisory personnel concerning her attitude and lack of ability to deal with fellow employees and donors. *Id.* The district court further held that, even assuming that appellant had presented a *prima facie* case of discrimination, Goodwill had proved by a preponderance of the evidence that its decision to not promote appellant was based upon legitimate, nondiscriminatory considerations, that is, that appellant was not promoted because she was not qualified for the position of Communications Supervisor. *Id.* at 6.

## III. TERMINATION

Appellant's theory at trial regarding her termination was that "but for" Goodwill's wrongful denial of promotion, appellant would not have refused to decode the code-a-phone, and therefore would not have been terminated.

Wurtz and Davies both testified that it was not uncommon for an order taker to be directed to read the code-a-phone in the absence of the supervisor. Davies further testified that appellant was not terminated simply because of her refusal to decode the code-a-phone, but also because of her inadequate work performance. Davies stated that she had spoken with appellant about her work performance on several occasions, but that it did not do any good.

The district court concluded that appellant's termination was based upon legitimate, nondiscriminatory considerations. *Wingfield v. Goodwill Industries of Greater Kansas City, Inc., supra,* slip op. at 11.

## IV. APPELLANT'S PRETEXT ARGUMENT

On appeal appellant argues that Goodwill's position that Bush and Simons were better qualified than appellant to be communications supervisors is a pretext as evi-

denced by her undisputed testimony that she performed the duties of a supervisor prior to the hiring of either Bush or Simons and also helped instruct those employees once they were hired. Therefore, appellant argues, it was incumbent upon Goodwill to introduce additional evidence demonstrating why inexperienced white workers were selected over a qualified black employee. Appellant further argues that Goodwill's admitted failure to consider her for the promotion in question constitutes a separate act of discrimination regardless of Bush's and Simons' qualifications. The district court found that, based upon the evidence and testimony as a whole, appellant failed to meet her burden of demonstrating that Goodwill's legitimate reason was a pretext. *Wingfield v. Goodwill Industries of Greater Kansas City, Inc., supra,* slip op. at 11. We affirm.

Assuming arguendo that appellant proved a *prima facie* case, the district court found that Goodwill had established legitimate, nondiscriminatory reasons for its decision not to promote appellant, that is, appellant was not qualified for the position of supervisor. The district court based its finding on the testimony of Wurtz and Davies, both of whom had been appellant's ultimate supervisor, and on Goodwill's documentary evidence concerning appellant's conduct and poor job performance. The district court found the fact that appellant's work performance as an order taker had been rated as "Significantly Below Average Standards for Industry" from the date of her initial employment until December 3, 1974, to bear directly on appellant's ability to adequately perform the duties of a communications supervisor. We find that there is adequate support in the record for the district court's conclusion that Goodwill had legitimate, nondiscriminatory reasons for not promoting appellant.

Therefore, in order to prevail on her employment discrimination claim, appellant had to prove by a preponderance of the evidence that the legitimate, nondiscriminatory reasons offered by Goodwill for not promoting her were not its true reasons but

were a pretext for discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), *citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973). The burden of proving a pretext is on the plaintiff and this burden merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. *Texas Department of Community Affairs v. Burdine, supra,* 450 U.S. at 256, 101 S.Ct. at 1096.

Appellant's basic argument is that she actually performed the duties of the communications supervisor but was not considered for the position. We do not read the record to support appellant's position and find that she has failed to demonstrate that her failure to be promoted involved an act of unlawful discrimination.

The only evidence supporting appellant's claim that she performed almost all the supervisor's duties is her own testimony. We note that at trial appellant herself testified that no one performed the supervisor's duties during the period between Fifer's termination and Bush's hiring. We also note that Davies testified that she did not recall appellant assuming any supervisory duty other than decoding the code-a-phone. Davies also testified that during the period between Bush's termination and Simons' hiring, the supervisor's duties were performed by Davies, Davies' secretary and Wills. Finally, we note that both Wurtz and Davies testified that they reviewed the files of the employees in the communications department in order to determine whether any employee was qualified for the supervisor's position before interviewing outside applicants. The testimony at trial was conflicting and we cannot say that the district court was clearly erroneous in determining that, based upon the evidence and testimony as a whole, appellant failed to meet her burden of demonstrating that Goodwill's legitimate reason was a pretext.

Because we find that appellant was not wrongfully denied a promotion, we do not reach appellant's claim that the wrongful

denial of promotion was the cause of her refusal to perform a job task which resulted in her termination.

The judgment of the district court is affirmed.