Ola M. **POLLARD** and Lydia DeJesus

v.

## CITY OF HARTFORD, et al.

### Civ. No. H–81–330.

United States District Court, D. Connecticut.

June 1, 1982.

---

Charles Krich, Hartford, Conn., for plaintiffs.

Dennis L. Pieragostini, Asst. Corp. Counsel, City of Hartford, James F. Meehan, Sp. Counsel, Hartford, Conn., for defendants.

## RULING ON DEFENDANTS' PENDING MOTIONS

BLUMENFELD, Senior District Judge.

In this action the plaintiffs challenge a written examination given by the City of Hartford in December 1980 to candidates for entry positions as officers with the Hartford Police Department. The named plaintiffs are a black female and an Hispanic female, respectively, who took and failed this examination. They seek to represent a class of "all persons similarly situated who constitute a class of those black or Hispanic or female persons failing the entry level examination." The plaintiffs allege that the examination had the effect and the intent of discriminating against them on the basis of national origin, race and/or sex. The City of Hartford and various officials of the City and its police department are named as defendants.

The plaintiffs filed their original complaint on May 12, 1981. The defendants filed a motion to dismiss under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. Alternative motions to strike certain allegations pursuant to Rule 12(f) and for a more definite statement under Rule 12(e) were filed by the defendants at the same time. Argument was heard on these motions on October 19, 1981. While these motions were pending, plaintiff's counsel informed the court that a motion for leave to file an amended complaint would be filed shortly and that the proposed amended complaint would resolve some of the issues presented by the defendants' motion to dismiss. The court, therefore, delayed ruling on the defendants' pending motions, and on February 10, 1982 the plaintiffs filed their motion for leave to amend. The court granted this motion on March 30, 1982, and the amended complaint was filed on the same date by the Clerk of the Court.

The plaintiffs' amended complaint alleges that the employment practices and policies of the defendants, specifically as they relate to the written entrance examination given in December 1980, are unlawful in that they violate (1) Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq.;[1] (2) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.; (3) Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983; (4) Section 16 of the Civil Rights Act of 1870, 42 U.S.C. § 1981; (5) the fourteenth amendment to the United States Constitution; (6) the settlement stipulation approved by this court in Cintron v. Vaughan, Civil No. 13,578; and (7) the regulations, rules, charter provisions and policies of the City of Hartford, specifically Rule VI of the City's personnel rules.

The defendants have not amended their motions to address the amended complaint so the court will rule on the pending motions as they apply to the amended complaint. The portion of the defendants' motion to dismiss which is addressed to plaintiffs' original claims under section 122 of the State and Local Fiscal Assistance Act of 1972, as amended, 31 U.S.C. § 1242, is now moot because the plaintiffs do not plead this statute in their amended complaint.

## I. TITLE VII CLAIM

The defendants move to dismiss the plaintiffs' claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII), on the grounds that the plaintiffs' failure to comply with the administrative procedures mandated by that statute defeats the court's jurisdiction and/or the plaintiffs' attempt to state a claim under Title VII. The amended complaint alleges that on May 18 and May 22, 1981, respectively, the named plaintiffs filed timely complaint affidavits with the Connecticut Commission on Human Rights and Opportunities and that Notices of the Right to Sue were issued on November 13, 1981 by the United States Department of Justice pursuant to 29 C.F.R. § 1601.-28(d)(2). The original complaint contained no such allegations and, in fact, was filed a few days prior to the time the plaintiffs filed their complaints with the state agency. The question now presented to the court, however, is whether the allegations of the amended complaint are sufficient to support the court's jurisdiction and to state a claim under Title VII.

■ Section 706 of Title VII sets forth a complex administrative process which must be complied with prior to instituting a private civil action under Title VII. 42 U.S.C. § 2000e-5. A person aggrieved by an employment practice allegedly in violation of the Act must (1) file a charge with the Equal Employment Opportunity Commission (EEOC) within 300 days of the alleged discrimination where there is a state or local agency with jurisdiction over the subject matter of the charge,[2] and (2) file a

---

1. The motion to dismiss does not challenge the plaintiffs' claim under Title VI and, therefore, the legal sufficiency of this claim is not presently before the court.

2. Where there is no state or local agency involved, a 180-day period applies for filing a charge with the EEOC. 42 U.S.C. § 2000e-5(e). The 300-day period governs this action

civil action in the district court within 90 days of receiving notice from the EEOC of its failure to reach a conciliation agreement with respect to the charge. 42 U.S.C. § 2000e–5(f). Federal regulations provide that a state or local agency may be designated as an agent of the EEOC for purposes of receiving the charge and that, therefore, filing with such a "§ 706 agency" shall constitute receipt by the EEOC. 29 C.F.R. § 1601.13. The charge is deemed to be filed with the EEOC after 60 days or after termination of the state agency proceedings, whichever occurs first. 29 C.F.R. § 1601.13(b). The Connecticut Commission on Human Rights and Opportunities is a recognized "§ 706 agency," 29 C.F.R. § 1601.74(a), and, therefore, the complaints filed by the plaintiffs with this agency satisfied the statutory requirement that a charge be filed with the EEOC.

### A. *Timeliness of the Plaintiffs' Charges*

■ The plaintiffs have filed their charges in a timely fashion because they were filed well within the 300-day period applicable to a case where there is a state agency with jurisdiction. The date on which the examination was given[3] can be taken as the date on which the discriminatory practices complained of occurred. Although the discriminatory practices arguably can be considered to have continued past that date, the court need not resolve the question of whether a continuing course of discrimination is involved here because even if the earliest possible date is used, *i.e.* the date of the examination, the charges filed with the Connecticut Commission on Human Rights and Opportunities were clearly timely as they were filed well within the 300-day period which applies to this case, 42 U.S.C. § 2000e–5(e).

### B. *Timeliness of the Complaint*

In addition to the requirement of filing a timely charge, Title VII plaintiffs must comply with the 90-day limitations period by filing their complaint not more than 90 days after receiving the statutory notice of their right to sue. 42 U.S.C. § 2000e–5(f). The plaintiffs here filed their original complaint on May 12, 1981, received the statutory notice on November 13, 1981,[4] and filed a motion for leave to amend on February 10, 1982, pleading, *inter alia*, compliance with the procedural requirements of section 706. The amended complaint itself was not filed until March 30, 1982 due to the court's delay in acting upon the motion for leave to amend.

■ It is a well established principle that the procedural requirements of Title VII should be construed flexibly in order to effectuate the remedial purposes of the statute. *See, e.g., Love v. Pullman*, 404 U.S. 522, 526–27, 92 S.Ct. 616, 618–19, 30 L.Ed.2d 679 (1972); *Kane v. Douglas Elliman, Hollyday & Ives*, 635 F.2d 141, 142 (2d Cir. 1980); *Egelston v. State University College at Genesco*, 535 F.2d 752, 754–55 (2d Cir. 1976). In this case the complaint can be held to be timely under either of two theories. First, the date on which the plaintiffs filed their motion for leave to amend can be considered to be the date on which they initiated this action. Since the motion for leave to amend was filed 89 days

---

because there is a state agency, the Connecticut Commission on Human Rights and Opportunities, with jurisdiction over the subject matter of the plaintiffs' charges. *Id.*

3. The complaint alleges only that the challenged examination was given in December 1980. The court will assume that the precise date was December 1, 1980, since that is the earliest possible date consistent with the complaint's allegations. Three hundred days from December 1, 1980 is well after May 1981 when the plaintiffs filed their charges with the Connecticut Commission on Human Rights and Opportunities.

4. Although the complaint does not allege on what date the plaintiffs received their right to sue notice, the court will assume that it was received on November 13, 1981, the date of the notice, since it makes no difference in this case in view of the fact that the date of the notice was itself within 90 days of the date on which the motion for leave to amend was filed. Where the difference between the date of issuance and the date of receipt is material, the date of receipt controls when the 90-day limitations period begins to run. *See, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973).

after issuance of the statutory notice, the complaint is timely on that basis alone. In addition, however, the amended complaint arises out of the same "conduct, transaction, or occurrence" set forth in the original pleading and, therefore, relates back to the date of the original complaint under Rule 15(c) of the Federal Rules of Civil Procedure. If receipt of the statutory notice six months subsequent to the filing of the original complaint validates the pending action, defendants' motion to dismiss the Title VII claim can be overcome on this theory as well.

■ I have little difficulty concluding that filing a motion for leave to amend a complaint constitutes the bringing of a civil action for purposes of complying with the 90-day limitations period. There is substantial authority, in an analogous situation, holding that the filing of a petition for appointment of counsel either constitutes the bringing of a civil action under Title VII or, at least, tolls the running of the limitations period until counsel is appointed. *E.g., Wingfield v. Goodwill Industries,* 666 F.2d 1177, 1179 n.3 (8th Cir. 1981); *Harris v. Walgreen's Distribution Center,* 456 F.2d 588, 592 (6th Cir. 1972). In such a situation the courts have concluded that, since there is no prejudice to the defendant who has been put on notice by the filing of a charge with the EEOC, a plaintiff's attempt to initiate his action by doing all he can without further leave of court satisfies the requirement that a civil action be brought within 90 days from the date statutory notice was received. *Wingfield v. Goodwill,* 666 F.2d at 1179 n.3.

■ The situation in the case at bar is similarly one where the plaintiffs have taken all the steps they could within the 90-day period. Their amended complaint could not be filed until they had obtained permission from the court. Fed.R.Civ.P. 15(a). Under these circumstances at least one court has held that filing a motion for leave to amend within the 90-day limitations period constitutes timely compliance with the statute despite the fact that the motion was not granted until the 90-day period had passed.

*Van Aken v. Young,* 24 Fair Employment Practice Cases 451, 454 (E.D.Mich.1980) (motion for leave to amend complaint to add additional plaintiffs filed within 90 days of date on which abandonment of class status activated 90-day limitations period). I conclude, therefore, that the remedial purposes of Title VII are best served by holding that, by filing a motion for leave to amend, the plaintiffs have complied with the 90-day limitations period and that their complaint is, therefore, timely.

■ There is also substantial support for upholding the timeliness of this complaint on the ground that the pending action, which was originally brought prior to receipt of the statutory notice, has been validated by the subsequent receipt of the notice. Under this theory it is irrelevant that the motion to amend was filed within the 90-day limitations period because the amendment relates back to the date of the original pleading. Fed.R.Civ.P. 15(c).

In line with the general policy favoring a liberal interpretation of Title VII's procedural prerequisites, many courts have concluded that issuance of a right to sue letter validates a pending Title VII action initially brought prior to the issuance of the notice. *E.g., Henderson v. Eastern Freight Ways, Inc.,* 460 F.2d 258, 260 (4th Cir. 1972) (per curiam), *cert. denied,* 410 U.S. 912, 93 S.Ct. 976, 35 L.Ed.2d 275 (1973); *Berg v. Richmond Unified School District,* 528 F.2d 1208, 1212 (9th Cir. 1975), *vacated on other grounds,* 434 U.S. 158, 98 S.Ct. 623, 54 L.Ed.2d 375 (1977); *Spirt v. Teachers Insurance & Annuity Assoc. of America,* 416 F.Supp. 1019, 1020 (S.D.N.Y.1976). *But see Stewart v. City of Pontotoc, Miss.,* 461 F.Supp. 767, 775 (N.D.Miss.1978) (filing amended complaint approximately 11 months after receipt of right to sue letter does not validate action pending prior to issuance of letter). As the Court of Appeals for the Fourth Circuit explained,

> it is a general policy of law to find a way in which to prevent loss of valuable rights, not because something was done too late, but rather because it was done too soon.

*Henderson v. Eastern Freight Ways, Inc.,* 460 F.2d at 260. I, therefore, conclude that a Title VII complaint filed prior to issuance of the required right to sue notice can be subsequently validated by issuance of the notice and an amendment of the complaint to plead receipt of the notice.

## II. CLAIM ASSERTED UNDER THE CONSENT DECREE ENTERED IN CINTRON V. VAUGHAN, CIVIL NO. 13,578

Plaintiffs' amended complaint alleges that the employment policies and practices challenged in this action violate the terms and conditions of a settlement stipulation which was approved by this court and entered, on June 21, 1973, as a consent decree in the case of *Cintron v. Vaughan*, Civil No. 13,578. In their motion to dismiss the defendants argue alternatively that (1), if the plaintiffs are members of the class certified in the *Cintron* case, they are barred from maintaining a separate action on the same claim covered by the consent decree and, (2) if the plaintiffs are not members of the *Cintron* class, they cannot invoke the protection of that decree.

*Cintron* involved a challenge, by a class of Hartford residents "who are members of the Black or Puerto Rican-Spanish American racial group or both," to an allegedly systematic pattern of police misconduct and discrimination towards members of racial minority groups. Named as defendants were various police officers and city officials of the City of Hartford. The City itself was not named as a defendant in *Cintron* as it is in the case at bar. The consent decree which was entered in *Cintron* provided, in Part II, for a variety of police procedures designed to prevent racially discriminatory practices by the police department. In Part III, the decree provided that the Hartford Police Department would maintain and improve its affirmative action plan in order to recruit and promote more minority police officers. It is under Part III of the decree that the plaintiffs bring the claim presently before the court.[5]

Although there is some ambiguity in the definition of the class covered by the *Cintron* decree,[6] it is unnecessary to deter-

---

**5.** The complete text of Part III of the *Cintron* decree provides as follows:

III. RECRUITMENT AND PROMOTION

1. It is the desire and intent of the City of Hartford to continue and improve its affirmative action plan to recruit policemen in the appropriate labor market in order to reflect properly the minority community.

2. The City of Hartford has sought to develop job eligibility and promotion criteria in the Hartford Police Department, that are free of racial or ethnic bias and solely related to job performance. Its entrance examination and requirements are presently being studied to aid in this determination by Dr. John Flynn, Associate Professor at the University of Connecticut, at the request of the City of Hartford. Eligibility requirements will be changed or modified upon a showing that they have an invidious discriminatory effect that is not based on job related criteria.

3. Promotion examinations, eligibility, and selection criteria of the Police Department, will be changed or modified, upon a showing that they have an invidious discriminatory effect that is not based on job related criteria.

4. Height requirements as an eligibility requirement have been lowered to five foot seven inches and may be further reduced if so indicated by a study presently being con-

ducted by the City of Hartford, pursuant to a Federal grant.

5. Psychological testing of all recruits is presently being conducted and will be reexamined, changed, modified, expanded, or declared unacceptable, in whole or in part, after publication of a study being conducted under LEAA Grant Number NI 71085 G.

6. The Hartford Police Department employs minority group members in its recruitment program as well as all major departmental divisions.

7. The Department will comply with all Federal and State law as set forth in statute and case law, to the extent that they apply to the City of Hartford.

8. The City of Hartford does not have a policy of excluding applicants for the Hartford Police Department where the applicant has a record of misdemeanor convictions not involving crimes of moral turpitude.

**6.** It is not clear whether the *Cintron* class is restricted to persons who were residents of Hartford on June 21, 1973 or whether people becoming residents of Hartford after that date are included within the class. If the class closed on that date, there are insufficient allegations in the case at bar to bring the plaintiffs within the *Cintron* class because the complaint

mine whether the named plaintiffs in this case are within the *Cintron* class. If they are within the class, and entitled to invoke the *Cintron* decree, any question of contempt should be raised by a motion brought in that case rather than by pleading the decree in this independent action. *See Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 452, 52 S.Ct. 238, 240, 76 L.Ed. 389 (1932); *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1373–74 (9th Cir. 1981). If the plaintiffs are not within the *Cintron* class, then they have no standing to complain of any alleged violation of the decree. *See* Fed.R.Civ.P. 23. In either event, the claim asserted under the *Cintron* decree should be dismissed and, therefore, the defendants' motion to dismiss is granted insofar as it relates to the claim asserted under *Cintron*.

The defendants' motion raises the further question of whether the *Cintron* decree is a res judicata bar to this action. The doctrine of res judicata precludes a party from bringing successive lawsuits on the same cause of action:

> For a judgment in a prior action to be a bar to reaching the merits in a subsequent action it is firmly established that the prior judgment must have been rendered by a court of competent jurisdiction, been a final judgment on the merits, and that the same cause of action and the same parties or their privies were involved in both suits.

*Herendeen v. Champion International Corp.*, 525 F.2d 130, 133 (2d Cir. 1975). No question has been raised concerning the general validity of the *Cintron* decree and there is no doubt that a consent decree generally had the same res judicata effect as any other judgment. *Wallace Clark & Co., Inc. v. Acheson Industries, Inc.*, 532 F.2d 846, 848 (2d Cir.), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976). A judgment in a class action will in most cases bind all members of the class and, therefore, if the plaintiffs are within the *Cintron* class that decree could have a res judicata effect upon this action, at least if this is the same cause of action and if the plaintiffs

does not allege that the plaintiffs were Hartford

were adequately represented in *Cintron*. *See, e.g., Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1058 (5th Cir. 1979).

■ The res judicata defense fails, however, for two reasons. First, the parties are not the same. Leaving aside the question of whether the plaintiffs are the same, it is clear that the defendants are not. Although the various city officials named as defendants in this case are in privity with those named as defendants in *Cintron*, the City of Hartford was not itself named as a defendant in the earlier case and, therefore, even if all the other elements of the defense were established, the plaintiffs' claims against the City would not be barred by the *Cintron* decree.

■ Secondly, the res judicata defense fails even as to those defendants in privity with parties to *Cintron* because this case does not involve the same cause of action as did *Cintron*. There are a variety of tests which have been used to determine whether or not causes of action are the same for purposes of applying the doctrine of res judicata. In this circuit some of the relevant criteria have been expressed as including

> whether a different judgment in the second action would impair or destroy rights or interests established by the judgment entered in the first action, whether the same evidence is necessary to maintain the second cause of action as was required in the first, and whether the essential facts and issues in the second were present in the first.

*Herendeen v. Champion International Corp.*, 525 F.2d at 133–34.

The *Cintron* case was a challenge to the practices of the Hartford Police Department vis-a-vis the minority community. It was not primarily directed towards employment and personnel policies of the police department. A notice, informing members of the class in that case of their right to request exclusion from the class, described the *Cintron* action as involving allegations that

residents on June 21, 1973.

officials of the City of Hartford and of the Hartford Police Department have acted ... to subject the plaintiffs and their class to a systematic pattern of violence, intimidation, and humiliation solely on account of race or ethnic origin in violation of law. The alleged acts have allegedly been carried out by police officers. By this action legal relief to prevent the occurrence of such acts in the future is being sought by the Plaintiffs.

The *Cintron* class was not put on notice that grievances concerning employment discrimination would be covered by any forthcoming judgment. Although the decree did contain a section covering employment discrimination,[7] the complaint did not include claims of employment discrimination and neither the named plaintiffs nor the plaintiff class in *Cintron* were defined as employees or prospective employees of the City of Hartford or the Hartford Police Department.[8] In addition, the acts challenged in the case at bar occurred long after the record closed in *Cintron*. *See Blair v. City of Greenville*, 649 F.2d 365, 368 (5th Cir. 1981); *Dawkins v. Nabisco, Inc.*, 549 F.2d 396, 397 (5th Cir.), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977). Since any doubt as to the identity of these causes of action should be resolved in favor of the party against whom the defense of res judicata is asserted, *see McNellis v. First Federal Savings & Loan Assoc. of Rochester*, 364 F.2d 251, 257 (2d Cir.), *cert. denied*, 385 U.S. 970, 87 S.Ct. 504, 17 L.Ed.2d 434 (1966), and the factual predicate of these two actions are not the same, I conclude that *Cintron* did not involve the same cause of action as the case at bar and, therefore, the res judicata defense cannot defeat the plaintiffs' claims.

### III. THE § 1981 CLAIM ASSERTED BY PLAINTIFF DeJESUS

■ Both named plaintiffs assert claims under, *inter alia*, 42 U.S.C. § 1981 alleging that

the acts and omissions of the defendants had both the intent and effect of discriminating against them because of their race and/or national origin and sex ....

Plaintiffs' Amended Complaint, Second Count, ¶ 32. The defendants move to dismiss DeJesus's section 1981 claim because she described herself, in the original complaint, as "of Spanish origin." The amended complaint substituted the term, "Hispanic," for the description, "of Spanish origin." The defendants' argument that national origin discrimination is not actionable under section 1981 is equally applicable to both the original and the amended complaints.

There is substantial authority for the rule that only a claim of racial discrimination, not a claim of discrimination on the basis of national origin, is cognizable under section 1981. *See, e.g., Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968) (42 U.S.C. § 1982, companion statute to § 1981, deals only with race discrimination); *Lofland v. Meyers*, 442 F.Supp. 955, 957 (S.D.N.Y.1977). Many courts, however, have held that a person of Hispanic background can state a claim of discrimination based upon race under section 1981. *E.g., Madrigal v. Certainteed Corp.*, 508 F.Supp. 310, 311 (W.D.Mo.1981); *Khawaja v. Wyatt*, 494 F.Supp. 302, 304 (W.D.N.Y.1980); *Maldondo v. Broadcast Playa, Inc.*, 10 Fair Employment Practice Cases 839, 839–40 (D.Conn.1974). The Supreme Court has held that a white person can state a claim under section 1981 for race discrimination. *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 286–87, 96 S.Ct. 2574, 2581–82, 49 L.Ed.2d 493 (1976). The Court's holding was based holding was based upon the statute's use of the words, "all persons," which, the Court concluded, includes white persons. *Id.* at 287, 96 S.Ct. at 2582. If white persons are included within the protection of the stat-

---

7. *See* note 5 *supra*. It is not clear that entry level examinations such as the one challenged in the case at bar are specifically covered by the *Cintron* decree.

8. Although the *Cintron* complaint contained no claim of employment discrimination, the prayer for relief did request, *inter alia*, an injunction requiring the desegregation of the Hartford Police Department.

ute it follows that persons of Hispanic background should also be able to state a claim under section 1981 so long as they allege that they have been discriminated against on the basis of their race rather than their national origin.

Since DeJesus has alleged discrimination on the basis of race as well as national origin and sex she has stated a claim under section 1981 and should be given the opportunity to prove racial discrimination at trial.

## IV. PLAINTIFFS' CLAIMS OF INTENTIONAL DISCRIMINATION UNDER SECTIONS 1981 AND 1983

 The defendants move to dismiss both plaintiffs' claims under sections 1981 and 1983 on the grounds that the complaint contains insufficient allegations of intentional discrimination to support these claims. After the Supreme Court's holding that intent to discriminate must be proven to sustain an action brought directly under the fourteenth amendment, *e.g., Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), most courts have concluded that only purposefully discriminatory conduct, not actions with merely a discriminatory effect or impact, can be the basis for a claim under sections 1981 and 1983. *E.g., Guardians Ass'n of New York City v. Civil Service Commission*, 633 F.2d 232, 267–68 (2d Cir. 1980), *cert. granted*, —— U.S. ——, 102 S.Ct. 997, 71 L.Ed.2d 291; *Crawford v. Western Electric Co. Inc.*, 614 F.2d 1300, 1309 (5th Cir. 1980).

The amended complaint, however, contains an allegation of intentional discrimination. The defendants contend that a conclusory reference to intent is insufficient to defeat a motion to dismiss because it constitutes an unwarranted deduction of fact which is not admitted as true for purposes of a motion to dismiss. Although it is true that the complaint does not contain specific factual allegations supporting their claim of intentional discrimination,

[a]n action, especially under the Civil Rights Act, should not be dismissed at the pleadings stage unless it appears to a certainty that plaintiffs are entitled to no relief under any state of the facts, which could be proved in support of their claims.

*Escalera v. New York City Housing Authority*, 425 F.2d 853, 857 (2d Cir.), *cert. denied*, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970). The plaintiffs may, through the course of this litigation, be able to prove intent to discriminate on the part of some or all of the defendants in this action. They have alleged such intent and, therefore, have stated a claim under sections 1981 and 1983. The defendants' motion to dismiss the claims asserted under sections 1981 and 1983 is, therefore, denied.

## V. CLAIMS ASSERTED UNDER LOCAL LAW

The defendants move to dismiss the plaintiffs' local[9] claims because the complaint insufficiently apprises the defendants of the nature or substance of these claims. Although the original complaint did not specify what state or local laws or regulations were allegedly violated by the defendants' actions, the amended complaint alleges in ¶ 32(4) of Count I, that the defendants violated:

regulations, rules, charter provisions and policies of the City of Hartford, particularly Rule VI of the city's personnel rules.

 A federal court may assume jurisdiction over a pendent state or local claim where the state and federal claims derive from a common nucleus of operative fact. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716, 719 (2d Cir. 1980). The assertion of pendent jurisdiction is discretionary, however, rather than a matter of the plaintiffs' right. *United Mine Workers v. Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. Where a pendent claim is not "inextricably intertwined" with the federal claims it is often not appropriate to exercise pendent juris-

---

**9.** Although the original complaint asserted claims under state as well as local law, the amended complaint only states claims under local law.

diction over the local claim. *See Whalen v. Heimann*, 373 F.Supp. 353, 359 n.10 (D.Conn.1974).

In this case the complaint contains only the conclusory allegation quoted above. The plaintiffs have cited only one specific provision, Rule VI of the City's personnel rules, and have not alleged any factual basis of the claims nor alleged the substance of the personnel rule which has allegedly been violated. Such conclusory allegations are wholly insufficient to indicate in what manner, if any, the local claims may be related to the federal claims. I, therefore, decline to assert pendent jurisdiction and undertake the kind of review which would be necessary to determine whether the City's action complied with Rule VI of their personnel rules. The plaintiffs' pendent claims are, accordingly, dismissed.

## VI. CONCLUSION

Defendants' motion to dismiss is denied in part and granted in part. Specifically, (1) the plaintiffs' claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, are sustained; (2) the claims asserted under the decree entered in *Cintron v. Vaughan*, Civil No. 13,578, are dismissed; (3) DeJesus's claim under section 1981 is sustained; (4) both plaintiffs' claims under sections 1981 and 1983 are sustained; and (5) the pendent claims asserted under the regulations, rules, charter provisions and policies of the City of Hartford, including Rule VI of the personnel rules, are dismissed.

In view of my resolution of the motion to dismiss, the alternative motions to strike and for a more definite statement are denied.

SO ORDERED.