**Brenda SHANKS, Plaintiff,**

v.

**Calvin WALKER and Doctor's Associates, Inc., Defendants.**

**No. Civ. 3:99CV2504(PCD).**

United States District Court, D. Connecticut.

Aug. 21, 2000.

William B. Barnes, Rosenstein & Barnes, Fairfield, CT, for Brenda Shanks.

Stephen R. Bellis, Pelligrino Law Firm, New Haven, CT, for Calvin Walker.

Calvin Walker, Bridgeport, CT, pro se.

Kristin L. Corcoran, Milford, CT, Vicki L. Evans, Doctor's Associates, Legal Dept., Milford, CT, for Doctor's Associates, Inc.

## RULING ON MOTION TO DISMISS

DORSEY, Senior District Judge.

Plaintiff Brenda Shanks ("plaintiff") alleges *inter alia* violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) ("Title VII"); wrongful termination; negligent hiring; negligent supervision; and negligent infliction of emotional distress. Defendant Doctor's Associates, Inc., d/b/a Subway ("Subway"), moves to dismiss the Title VII claim for lack of subject matter jurisdiction and the remaining claims for failure to state a claim upon which relief may be granted.

## I. BACKGROUND

Plaintiff alleges the following. She is a middle-aged African American woman. In June, 1999, plaintiff and defendant Walker ("Walker") were employed by Subway. Plaintiff had no personal relationship of any kind with Walker. Walker presented a stereotypically masculine or "macho" image at Subway.

On or about 5:00 p.m. on June 22, 1999, at the rear exit of a Subway building, plaintiff, a female co-worker and Walker had a brief conversation, in the presence of a white male supervisor. Walker lost his temper. He cursed plaintiff and the female worker, using foul and obscene language, including words derogatory towards women. The supervisor witnessed this scene but did not stop or control Walker.

Walker then shoved plaintiff, punched her in the face, and hit her in her eye, causing serious physical injury. Plaintiff

at no time struck Walker. Plaintiff tried to escape Walker by going to her car in the parking lot. Walker followed her. The supervisor did not stop Walker's attack, protect plaintiff or prevent Walker from following her.

The next day, before plaintiff had returned to work, Subway fired her for fighting. Subway did not communicate with plaintiff about the incident or about her termination. Instead a Subway employee told plaintiff's father that she had been fired. He in turn told her. Subway did not investigate the attack, such as by taking statements from witnesses.

Plaintiff was treated at a hospital emergency room. She has seen since several doctors and a dentist for treatment of her injuries. She also sees a therapist for treatment of depression.

On Dec. 8, 1999, plaintiff filed administrative charges with the Equal Employment Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CHRO"). Plaintiff received a "Right to Sue Letter" from the EEOC in March and a release of jurisdiction from the CHRO in May, 2000, both after filing this action.

## II. DISCUSSION

### A. *Motion to Dismiss Standard*

A motion to dismiss is properly granted when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 58 (2d Cir.1985) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). A motion to dismiss must be decided on the facts as alleged in the complaint. *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985). All facts in the complaint are assumed to be true and are considered in the light most favorable to the non-movant. *Williams v. Avco Lycoming,* 755 F.Supp. 47, 49 (D.Conn.1991).

### B. *Title VII Claim*

Count two alleges that plaintiff's termination was motivated by discriminatory animus on account of her race and gender. Subway contends that because she failed to obtain both a right to sue letter from the EEOC and a release of jurisdiction from the CHRO prior to suing, thus failing to exhaust her administrative remedies, this claim should be dismissed for lack of subject matter jurisdiction.

The receipt of a right to sue letter is a statutory prerequisite to bringing a Title VII action. *See* 42 U.S.C. § 2000e–5(a); *Kounitz v. Slaatten,* 901 F.Supp. 650, 655 (S.D.N.Y.1995). The procedural prerequisites of Title VII should be construed liberally in order to effectuate its remedial purposes. *See Pollard v. City of Hartford,* 539 F.Supp. 1156, 1160 (D.Conn.1982). In line with this policy, issuance of a right to sue letter validates a Title VII action commenced prior to the receipt of the notice. *See id.* at 1161. "Barring a Title VII plaintiff, who received his right-to-sue letter after filing suit, from ever pursuing his Title VII claim ... would be an extreme sanction, contrary to the general policy of law to find a way to prevent the loss of valuable rights...." *Pinkard v. Pullman–Standard,* 678 F.2d 1211, 1218 (5th Cir.1982).

Plaintiff amended her complaint to allege receipt of the right to sue letter from the EEOC. Plaintiff also now alleges receipt of a release of jurisdiction from the CHRO. Thus, plaintiff's Title VII claim is properly before the court. Subway's motion to dismiss plaintiff's Title VII claim is denied.

### C. *Wrongful Termination Claim*

Count four alleges plaintiff's wrongful termination because she had been the victim of a crime. Subway contends that plaintiff fails to plead violation of a valid public policy.

"Connecticut adheres to the rule that an employee hired for an indefinite

period is dischargeable at the will of his employer." *Cook v. Alexander & Alexander,* 40 Conn.Supp. 246, 247, 488 A.2d 1295 (1985). A narrow exception to the rule is recognized "where the discharge contravenes a clear mandate of public policy." *Sheets v. Teddy's Frosted Foods,* 179 Conn. 471, 474, 427 A.2d 385 (1980). "Given the inherent vagueness of the concept of public policy, it is often difficult to define precisely the contours of the exception." *Morris v. Hartford Courant Co.,* 200 Conn. 676, 680, 513 A.2d 66 (1986). Claims for wrongful termination are considered in terms of "whether the plaintiff has ... alleged that his discharge violated any explicit statutory or constitutional provision ... or whether he alleged that his dismissal contravened any judicially conceived notion of public policy." *Daley v. Aetna Life & Casualty Co.,* 249 Conn. 766, 798, 734 A.2d 112 (1999).

■ Plaintiff fails to state a legally sufficient claim that her dismissal violated an explicit statutory or constitutional provision or contravened a judicially conceived notion of public policy. *See id.* Plaintiff claims a strong, well established Connecticut public policy to protect the rights of crime victims, citing Conn.Gen.Stat. chapters 321, 325, 952, 960, 961, 961A, and 968. However, these statutes voice a policy of protecting rights of crime victims in the *criminal justice process,* not in the employment context. Plaintiff does not plead that her discharge contravenes a clearly mandated public policy and her wrongful termination claim is dismissed.

### D. *Negligent Hiring Claim*

■ Count six alleges that Subway failed to exercise reasonable care in selecting and hiring Walker as an employee. Subway challenges the sufficiency of the claim.

Plaintiff may state a cause of action for the negligent hiring of an employee. *See Shore v. Stonington,* 187 Conn. 147, 155, 444 A.2d 1379 (1982). "[A] plaintiff must ordinarily plead and prove that she was injured by the defendant's own negligence

in failing to select as its contractor a person who was fit and competent to perform the job in question." *Surowiec v. Security Forces, Inc.,* No. CV 95–0547875, 1995 WL 328362, at *4 (Conn.Super.1995). Furthermore, the plaintiff's injuries must result from the employee's "unfit or incompetent performance of work." *Id.*

Plaintiff does not allege that Subway selected an employee who was not fit or competent to perform the services of employment. Plaintiff alleges that Subway knew or should have known that Walker, by virtue of his "macho" attitude, i.e. from his appearance, might assault persons such as plaintiff. Plaintiff does not allege how Walker's incompetence to perform his duties as a part-time cleaner. Additionally, plaintiff does not allege that her injuries were caused by Walker's incompetence in the performance of his job. Accordingly, plaintiff's negligent hiring claim is dismissed.

### E. *Negligent Supervision Claim*

Count six also alleges Subway's negligent supervision of Walker, by failing to control him and to prevent the assault. Subway argues that it did not had no duty to protect plaintiff because it neither knew nor should have known that Walker would engage in such tortious conduct.

■ A plaintiff may sue for negligent supervision of employees. *See Gutierrez v. Thorne,* 13 Conn.App. 493, 500, 537 A.2d 527 (1988). Plaintiff must allege that she suffered injury due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise. *See Karanda v. Pratt & Whitney Aircraft,* No. CV–98–582025S, 1999 WL 329703, at *10 (Conn.Super.1999). "[A] defendant does not owe a duty of care to a plaintiff to protect her from another employee's actions unless the defendant knows or has reason to know that the employee has a propensity to engage in tortious conduct." *Id.*

Subway argues that a reasonable person in the supervisor's position, knowing what he knew or should have known, could not have anticipated a necessity to control Walker. It claims that prior to the altercation between Walker and plaintiff, it was unaware of Walker's propensity to act violently and thus had no duty to protect her from Walker until after the event.

Subway's argument fails to account for all the allegations. Plaintiff alleges that a Subway supervisor witnessed the confrontation and subsequent events, including: 1) Walker cursing her, 2) moving towards her, 3) shoving her, 4) hitting her, and 5) following her to her car. Each of these events could inform the supervisor of Walker's propensity for violence and give rise to a duty to prevent Walker's subsequent acts. The supervisor allegedly did nothing and thus failed to meet the duty to control Walker. Count six therefore states a claim for negligent supervision of employees.

### F. Negligent Infliction of Emotional Distress Claim

Count seven alleges that Subway negligently inflicted extreme emotional distress upon plaintiff in its manner of termination. Subway contends that plaintiff fails to state a claim. To state this cause of action, plaintiff must plead that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm." *Montinieri v. Southern New England Tel. Co.,* 175 Conn. 337, 345, 398 A.2d 1180 (1978). In the employment context, the cause of action arises only where it is "based upon unreasonable conduct of the defendant in the termination process." *Morris v. Hartford Courant Co.,* 200 Conn. 676, 682, 513 A.2d 66 (1986).

Subway's termination of plaintiff was not so unreasonable as to support a claim for negligent infliction of emotional distress. Plaintiff claims that a Subway employee told her father, who told her.

However, plaintiff does not claim that the employee so acted at Subway's direction or merely conveyed a rumor. Absent Subway's direction of the manner in which plaintiff learned of her termination, it cannot be held accountable.

Plaintiff also argues that Subway wrongfully terminated her employment because she fought with Walker. Mere termination of employment, *even for wrongful reasons,* does not constitute negligent infliction of emotional distress. *See Parsons v. United Technologies Corp.,* 243 Conn. 66, 88–89, 700 A.2d 655 (1997). Plaintiff must show that the termination occurred in a way to cause more than the normal distress of any termination. *See Chieffalo v. Norden Systems, Inc.,* 49 Conn.App. 474, 480–81, 714 A.2d 1261 (1998). Plaintiff does not show how learning of her termination from her father or being fired for fighting inflicted more emotional distress than any other job loss. Therefore, plaintiff's negligent infliction of emotional distress claim is dismissed.

## III. CONCLUSION

Accordingly, Subway's motion to dismiss [Doc. No. 18] is GRANTED in part and DENIED in part. Subway's motion to dismiss the wrongful termination, negligent hiring, and negligent infliction of emotional distress claims is granted. Subway's motion to dismiss the Title VII and negligent supervision claims is denied.

SO ORDERED.