Louis **MADRIGAL**, Plaintiff,

v.

**CERTAINTEED CORP.**, Defendant.

No. 77–0073–CV–W–6.

United States District Court, W. D. Missouri, W. D.

Feb. 24, 1981.

---

Samuel I. McHenry, Legal Aid Society, Kansas City, Mo., for plaintiff.

John R. Phillips and William C. Nulton, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION

SACHS, District Judge.

Plaintiff, a Mexican-American male, alleges a discriminatory discharge after about a month's service with defendant. His Title VII claim asserts sex discrimination and discrimination because of national origin, in violation of the 1964 Civil Rights Act. 42 U.S.C. § 2000e et seq. He also alleges a violation of the Civil Rights Act enacted in 1866, now 42 U.S.C. § 1981.

The applicability of § 1981 to "Hispanic" individuals has been discussed but not ruled on by the Court of Appeals for the Eighth Circuit, *Cariddi v. Kansas City Chiefs Football Club*, 568 F.2d 87 (8th Cir. 1979). That court has observed that some courts have held that "claims of national origin discrimination are actionable under § 1981 only to the extent that they are motivated by or undistinguishable from racial discrimination." l.c. 88. I agree with the distinction as phrased by the Court of Appeals.

A district court ruling in the Eighth Circuit sustains § 1981 standing of claims by "Spanish-surnamed Americans of Mexican descent." *Cervantes v. Dobson Brothers Construction Co.*, 19 EPD ¶ 8979 (D.Neb. 1978). Chief Judge Urbom accepted pleadings in that case alleging discrimination in employment because of national origin. I also agree with Judge Urbom, but only "(b)ecause Hispanics are frequently identified as nonwhites," and thus "the scope of § 1981 is broad enough to extend to that group." *Aponte v. National Steel Service Center*, 500 F.Supp. 198, 203 (E.D.Ill.1980). See *Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968 (10th Cir. 1979); *Scott v. Eversole Mortuary*, 522 F.2d 1110 (9th Cir. 1975).

In the present case, the parties agree that Mexican-American ancestry is understood to signify a mixture of Spanish and Indian origins. Although Spanish origin, alone, would probably not qualify for § 1981 consideration, I am confident that allegations of racial bias against Mexican-Americans may be soundly litigated under that section.

Section 1981 should be construed to offer protection to persons who are the objects of discrimination because prejudiced persons may perceive them to be nonwhite, even though such racial characterization may be unsound or debatable.

Plaintiff thus presents a case properly brought under § 1981; he has also processed his claim properly under Title VII. The Equal Employment Opportunity Commission found no probable cause for the complaint, but plaintiff contends there was a misunderstanding as to a pertinent fact set forth below. In any event, the Court reaches the same conclusion.

Sex discrimination is not seriously advocated by plaintiff as a ground for his discharge. Two women, employed after his discharge, apparently filled his position and that of another discharged male (black). Nothing in the record, however, suggests that defendant was discharged to create a place for the women. The new employees were high on the roster of available applicants, and were selected when positions were open. It is true that employer records categorized women, but not minorities, as "underutilized," and the selection of women

replacements helped carry out the employer's affirmative action program, but it would be wholly speculative and unsound to conclude that this is a reverse discrimination case.

Plaintiff's claim that he was discriminated against because he is Mexican-American is hardly more tenable. Defendant's records indicate an almost complete absence of Mexican-American employees. There have been one or at most two such employees in a total of 80. The Court cannot take judicial notice, however, that this is significantly below the Mexican-American ratio of the population of Kansas City, Missouri, the site of defendant's plant, and plaintiff makes no showing of a material deficiency in employment of the minority in question.

A curiosity of the case is that plaintiff's "replacements" were identified both by the employer and by the EEOC as Spanish-surname Americans (like plaintiff). The identification was corrected during litigation, however, and the women are now identified as Samoans.

Plaintiff avers that he was told at the time of discharge that he was "too little" for the job. The alleged statement, if made, would arouse some suspicion, because at least one of plaintiff's "replacements" was some three inches shorter than he. It would probably be overly generous, however, to rule that plaintiff made a prima facie case by producing evidence of (1) a minimal number of Mexican-American employees, (2) his discharge and replacement by persons who were not Mexican-Americans (though believed to be such), and (3) a suspicious reason purportedly given for his discharge.

The Court is authorized, in case of doubt, to go directly to defendant's evidence without determining whether a plaintiff has established a prima facie case. *Buckley v. City of Omaha*, 605 F.2d 1078, 1080 (8th Cir. 1979). See also *Mosby v. Webster College*, 563 F.2d 901, 903 note 2 (8th Cir. 1977). The ultimate basis for ruling for defendant, therefore, is that it articulated in litigation (and prior thereto, in company records) valid nondiscriminatory reasons for discharging plaintiff, and the evidence shows that the reasons given were not pretextual.

Plaintiff testified that he performed his assembly-line work satisfactorily, and that he encountered no great physical stress. Defendant's testimony was that plaintiff, a new employee, was unable to cope with the routines of the assembly-line, created dangers by mishandling the product (composition shingles), and was physically exhausted by the work.

Nothing supports plaintiff except his own testimony. His trial testimony evidenced much confusion about his employment record and was not reliable. He did make an early assertion, oft repeated, that he was told he was "too little" for the job. On one occasion he attributed the comment to one superior and on another occasion he attributed it to another. Even if made, the remark apparently was an expression of sympathy for plaintiff's physical difficulties on the job. Although plaintiff denied at trial that he had suffered physical stress, he told the EEOC that defendant "broke half of my body" and "slave(d) me."[1] D.Exh. 3.

The two supervisors testified, with credibility, that plaintiff created dangers by throwing shingles which had been hastily pulled from the equipment, that he failed to master a pedal operation necessary to the work, and that he performed inefficiently and contrary to instructions. A contemporaneous record confirms this testimony. D.Exh. 7. Similar reasons were given for discharge of other employees, white and black. D.Exh. 8. No racial pattern can be found in the discharges, and no racial (or

---

1. The unreliability of plaintiff's testimony, by reason of confused memory or self-serving bias, also causes the Court to disregard casual assertions by plaintiff that the women who replaced him and another employee were not satisfactory employees. His observation of their work was very limited and contained a built-in bias against crediting them with adequate performance.

ethnic) discrimination can be inferred from the testimony.[2]

It is therefore ORDERED that judgment be entered in favor of defendant, at plaintiff's costs.

---

2. This conclusion is not inconsistent with the strong possibility that the termination was badly handled, that plaintiff was not fully warned of the deficiencies, and that plaintiff's immediate supervisor may not have proposed his discharge. While poor personnel practices may be inferred, no Civil Rights Act violation is shown. Any claim of wrongful discharge, apart from racial discrimination, should have been processed as a grievance under the defendant's collective bargaining agreement.