Salvatore **PETRONE**

v.

**CITY OF READING, Rodney E. Steffy, Jane Doe and John Roe.**

**Civ. A. No. 82–1360.**

United States District Court, E. D. Pennsylvania.

June 23, 1982.

Blake C. Marles, Allentown, Pa., for plaintiff.

Jack A. Linton, Peter F. Cianci, Arthur E. Grim, Asst. City Sol., Reading, Pa., for City of Reading and Steffy.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

In early April, 1980, plaintiff, Salvatore Petrone, purchased an on-going pizza business in Reading, Berks County, Pennsylvania, with the apparent intention of opening a "Scotto's Pizza" franchise. Count I of the complaint alleges that shortly thereafter, plaintiff invested an unspecified sum of money and purchased building plans which contemplated minor cosmetic alterations; no structural ones were anticipated. Defendant, City of Reading (City) which normally reviews such plans within a seven-day period, unexpectedly and inexplicably delayed a full ten weeks before approving them. Plaintiff, upon expeditious completion of the alterations received approval from both the Bureau of Fire Protection and Building Inspection. The City, however, refused to issue an occupancy permit. Instead, it demanded that additional alterations be made—this notwithstanding the fact that such work was neither shown on,

nor required by, the approved plans. Administrative and bureaucratic delays prevented plaintiff from opening the "Scotto's Pizza" franchise until December, 1980, a full eight months after he had acquired the property.

During this same period, a competing pizza parlor commenced business operations in the building adjacent to plaintiff's. The City tacitly permitted the competitor to renovate its structure without the myriad licenses and inspection approvals which plaintiff obtained *prior* to commencing work. Continuing, the City also agreed to allow the competitor to conduct business without an occupancy permit. The effect of the City's discriminatory application of its ordinances placed plaintiff at a competitive disadvantage when he finally did open his doors.

Plaintiff's complaint continues and asserts that upon commencing operations, the City informed him of his obligation to upgrade the top floors of the building before renting them out. This further placed plaintiff at a competitive disadvantage since his competitor had already rented out its remaining floors. Moreover, plaintiff had relied upon rentals from the upper floors, coupled with pizza sales, to maintain himself and his family.

The City, reacting to plaintiff's complaint of code enforcement discrimination passed a resolution requiring the competitor to immediately bring his business up to code standards. After three months of failing to enforce its resolution, the City passed a second one which contained a timetable for scheduled code compliance by the competitor. The City failed to force compliance with this second resolution and plaintiff charges that his competitor is still permitted to operate even though it has failed to comply with code standards and presents substantial health hazards. Moreover, in contrasting the favorable treatment which the competitor received to the harsh treatment accorded him, plaintiff states that he has lost both his pizza franchise in Reading and one at a nearby mall.

Plaintiff's difficulties with defendant's Police Chief Rodney Steffy (Steffy) and two unknown city agents, Jane Doe and John Roe, are chronicled in Count II of the complaint. It alleges that in 1981 police bureau employees approached plaintiff and requested that he sponsor their softball team. Plaintiff complied with the request because he believed that the use of his name by the police officers' team would heighten his already good reputation and provide favorable advertising. Steffy, upon learning of the team's sponsor and after possible discussion with the Doe and Roe defendants, informed police employees that they could not use plaintiff's name on their softball uniforms because of his, plaintiff's, links to organized crime. These false allegations made by Steffy in his individual capacity and as an agent for the City of Reading, were repeated to a local newspaper, printed by a national wire service and designed to injure plaintiff. The combined result of Steffy's statements and the discriminatory code enforcement resulted in plaintiff losing his business.

Count III of the complaint asserts generally that the defamation and discriminatory code enforcement suffered by plaintiff were the object and result of a conspiracy in which all defendants participated.

Finally, Count IV inveighs against the City and the Roe and Doe defendants and asserts that they conspired to ruin plaintiff's business and standing in the community by engaging in a pattern of discriminatory code enforcement. Plaintiff also charges that defendants failed to prevent the conspiratorial activities of other, unknown persons who also sought to destroy plaintiff's business reputation.

Plaintiff's legal claims are based upon the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, the Civil Rights Act of 1871, 42 U.S.C. § 1983 and 42 U.S.C. §§ 1985, 1986. The state claim of defamation is appended to plaintiff's federal claims for relief. We assume the veracity of these facts when deciding defendants' motion to dismiss. *Walker Process Equipment Co. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965).

Defendants' motion to dismiss asseverates that plaintiff's failure to allege an appropriate class-based animus is fatal to all claims predicated upon §§ 1981, 1982, 1985, 1986. Continuing, defendant reasons that charges of defamation or libel are insufficient upon which to predicate § 1983 liability as are allegations that defendants enforced a facially neutral building ordinance. Finally, the City urges that plaintiff's allegations fail to assert sufficient involvement of the City in the conduct of which plaintiff complains. For the reasons explicated upon below, we grant the motion *pro tanto.*

### § 1981

■ 42 U.S.C. § 1981 guarantees that [a]ll persons within the jurisdiction of the United States shall have the same right in every state and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Interpreting this section, the Supreme Court noted that the phrase "as enjoyed by white persons" was included in the act in order to emphasize the "racial character" of the protected rights. *Georgia v. Rachel,* 384 U.S. 780, 791, 86 S.Ct. 1783, 1789, 16 L.Ed.2d 925 (1966). Generally, § 1981 does not support a claim based "solely upon national origin discrimination". *Patel v. Holly House Motel,* 483 F.Supp. 374, 382 (S.D. Ala.1979) (citing cases). Rather, in order to seek the protection which § 1981 provides, plaintiff must allege discrimination based upon his status as a non-white. Hence, some courts have extended § 1981 protections to Spanish surnamed individuals. *See e.g., Ramirez v. Sloss,* 615 F.2d 163, 167, n. 5 (5th Cir. 1980) where the court observed

that § 1981 applies to discrimination based upon alienage. However, as the Fifth Circuit subsequently made clear, § 1981 does not "address discrimination based upon national origin". *Rivera v. City of Wichita Falls,* 665 F.2d 531, 534, n.4 (5th Cir. 1982). *See also, Madrigal v. Certainteed Corp.,* 508 F.Supp. 310, 311 (W.D.Mo.1981). The rationale for the expansion of § 1981 to Hispanic plaintiffs is based upon application of traditional principles which limit § 1981 suits to non-whites, i.e., "because Hispanics are frequently identified as non-whites", they are protected by and may sue under § 1981. *Id.* (quotations omitted). In fact, *Madrigal,* upon which plaintiff relies, opines that absent the frequent perception that Hispanics are non-whites "Spanish origin, alone, would probably not qualify for § 1981 consideration". *Madrigal v. Certainteed Corp.,* 508 F.Supp. at 311. *Madrigal* finally concludes that § 1981 protects persons who "may be perceived as non-white, even though such racial characterization may be unsound or debatable". 508 F.Supp. at 310.

■ In the case at bar, plaintiff's claim of discrimination is apparently predicated upon his Italian heritage.[1] As *Madrigal* observed, Spanish origin alone is insufficient to state a § 1981 claim. The same is true of Slavic, *Vuksta v. Bethlehem Steel Corp.,* 540 F.Supp. 1276 at 1281–1282 (E.D. Pa.1982); *Budinsky v. Corning Glass Works,* 425 F.Supp. 786 (W.D.Pa.1977), and Indian origin. *Patel v. Holley House Motel,* 483 F.Supp. at 383. As we recently observed, § 1981 "speaks directly to race and does not concern disparity in treatment on the basis of religion, sex or national origin". *Boddorff v. Publicker Industries, Inc.,* 488 F.Supp. 1107, 1109 (E.D.Pa.1980). *Contra, Harris v. Norfolk & Western Ry. Co.,* 616 F.2d 377, 378 (8th Cir. 1980) (dictum). Since plaintiff has asserted discrimination

---

1. Nowhere in his complaint does plaintiff even allege that defendants' conduct is motivated by anti-Italian animus. The only hint of its existence is found in plaintiff's opposition to defendants' motion to dismiss at 6 which argues that plaintiff was discriminated against "solely because of an unfounded belief that [he], based upon his heritage, was connected with organized crime". For the purpose of our discussion of plaintiff's § 1983 claims *only,* we have assumed that plaintiff is complaining of discrimination based upon his Italian heritage.

based only upon his heritage and there is no allegation that plaintiff is generally perceived as a non-white, we will grant defendant's motion to dismiss all § 1981 claims.

### § 1982

Plaintiff's § 1982 claims suffer from the same deficiency as do the § 1981 claims; they fail to allege an *appropriate* class-based discrimination. Both § 1981 and § 1982 evolve from the original Act of 1866 and are subject to similar construction. *Runyon v. McCrory*, 427 U.S. 160, 173–74, 96 S.Ct. 2586, 2595–96, 49 L.Ed.2d 415 (1976), *Tillman v. Wheaton-Haven Recreation Association*, 410 U.S. 431, 439–40, 93 S.Ct. 1090, 1094–95, 35 L.Ed.2d 403 (1973). The Supreme Court, addressing the issue at bar, specifically stated that § 1982 "deals only with racial discrimination and does not address itself to discrimination on grounds of religion or national origin". *Jones v. Alfred H. Meyer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). Hence, plaintiff's § 1982 claims which are predicated upon heritage will be dismissed.

### § 1983

Plaintiff's claims under § 1983 are that the defendants discriminatorily singled him out for unduly severe ordinance enforcement and that they defamed him. Moving to dismiss, defendants assert that plaintiff's failure to meet a valid ordinance standard as applied to him, but not to others, fails to state a cognizable deprivation. *Snowden v. Hughes*, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Defendants also argue that the claim of defamation is insufficient to support § 1983 liability. We turn now to those theories.

*Snowden v. Hughes, supra*, considered whether an Illinois Canvassing Board, which improperly failed to certify plaintiff as a candidate for office, had deprived him of equal protection of the laws. Concluding that no constitutional deprivation had occurred, the court observed that "not every denial of a right conferred by state law involves a denial of the equal protection of the laws ..." *Id.* at 8, 64 S.Ct. at 401. Continuing, the *Snowden* court held that the

unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is *shown* to be present in it an element of intentional or purposeful discrimination. *Snowden v. Hughes*, 321 U.S. at 8, 64 S.Ct. at 401 (emphasis added). In so holding, the *Snowden* court affirmed the District Court's dismissal of the complaint. 321 U.S. at 13, 64 S.Ct. at 403.

■ Plaintiff's failure in *Snowden* was two-pronged: the "opprobrious epithets" in the complaint of willful and malicious conduct failed to disclose the "purpose or consequence" of defendant's improper action *and* defendant's conduct was apparently "unaffected by and unrelated to the certification of any other nominee". 321 U.S. at 10, 64 S.Ct. at 402. In the case at bar, plaintiff has met the first of these conditions, he alleges in paragraph 33 that all defendants "unlawfully and maliciously" sought to subject him to "unfair, unreasonable discriminatory enforcement practices". A consequence of this conduct was that plaintiff lost his franchise and building. Complaint ¶ 47. Plaintiff has, however, failed to meet the second prong of the test articulated in *Snowden* : he has not alleged that the strict code enforcement conduct to which he was subjected was, in any way, "affected or related to" the more lax code enforcement accorded his competitor. In fact, the complained-of conduct antedates the entry of plaintiff's competitor into the business by almost three months. As such, it seems unlikely that plaintiff could, consistent with Fed.R.Civ.P. 11, allege that the strict enforcement which he suffered was "affected by" the existence of his competitor. *See generally, Martin v. King*, 417 F.2d 458 (10th Cir. 1969); *Williams v. Patton*, 410 F.Supp. 1 (E.D.Pa.1976) (VanArtsdalen, J.)

■ Turning to plaintiff's claim of defamation, we believe that he has properly stated a claim under § 1983. The complaint asserts that all defendants agreed to

damage plaintiff's reputation and to defame his character. Complaint, ¶ 45. Apparently, part of the plan to discredit plaintiff involved communication of the allegedly defamatory remarks to a local newspaper. Complaint, ¶ 38. Finally, as a result of the defamatory campaign plaintiff lost his business and suffers difficulty in finding suitable employment. Complaint, ¶ 47.[2]

Defendants rely on *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) for the proposition that allegations by state actors which impugn reputation properly spawn only state court defamation actions. However, in explaining and limiting its holding, the court observed that loss of reputation "alone, apart from some more tangible interests such as employment . . . [is] by itself" insufficient to invoke the protections of the Due Process Clause. *Id.* at 701, 96 S.Ct. at 1160. In the case at bar, plaintiff has alleged that defendants, state actors, have, through defamation, caused him a loss of employment: his business. He has also asserted a deprivation of a liberty interest, i.e., "later opportunities for . . . employment". *Goss v. Lopez*, 419 U.S. 565, 575, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). *Accord, Bartholomew v. Fischl*, 534 F.Supp. 161, 163–64 (E.D.Pa.1981); *Skrocki v. Caltabiano*, 505 F.Supp. 916 (E.D.Pa. 1981). Accordingly, plaintiff has properly stated a claim under § 1983.

### § 1985

To prevail under § 1985(3) plaintiff must allege an

> intent to deprive [him] of equal protection, or equal privileges and immunities . . . there must be some racial or perhaps

otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by law to all. (emphasis is original, footnotes omitted). *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Defendants correctly point out that plaintiff's complaint fails to allege any class-based animus as supplying the motive for their conduct. Hence, they move to dismiss.

Opposing the motion, plaintiff asserts that *Griffin's* requirement of class-based animus is only applicable to actions involving *private* conspiracies. Plaintiff argues that *Griffin* should be confined to its facts and that allegations of class animus are unnecessary when the charged conspiracy involves state actors.

Support for plaintiff's theory is found in *Selzer v. Berkowitz*, 459 F.Supp. 347 (E.D. N.Y.1978) where the court held that a proper class-based animus had been alleged by plaintiff, a college professor who had submitted himself to a CIA debriefing upon return from a trip abroad. After so holding, the court, in dictum, gave an "alternative reason" for its conclusion that plaintiff had properly alleged a § 1985(3) violation. *Id.* at 351. *Selzer* then opined that the Supreme Court in *Griffin* did not intend to require class-based animus where the conspiracy was infused with state action. *Selzer v. Berkowitz*, 459 F.Supp. at 352.

■ We do not, however, follow *Selzer* ; rather, we are persuaded that the majority of courts which have addressed the issue

---

**2.** The City argues that plaintiff's complaint merely alleges liability for the purportedly defamatory remarks against the individual defendants and not against it. Specifically, it asserts that plaintiff has failed to allege any *official* action which

> unconstitutional[ly] implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing body's] officers.

*Monell v. Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978).

The complaint in its "second cause of action" may, in fact, suffer from this infirmity. It

alleges only that Police Chief Steffy acted as "an agent" for the City when defaming plaintiff. However, in the "third cause of action" plaintiff incorporates all previous allegations (¶ 44) and asserts that the City and *all other defendants* "maliciously" sought to "damage" plaintiff by "defam[ing] his character". (¶ 45) We believe that the allegation that all defendants conspired *with the City* to purposefully defame plaintiff suffices to meet *Monell's* jurisdictional hurdle which requires a deprivation endorsed by "those whose edicts or acts may fairly be said to represent official policy". *Id.* at 694, 98 S.Ct. at 2037.

are correct in their analysis. The first such decision was *Lesser v. Braniff Airways, Inc.*, 518 F.2d 538, 534 (7th Cir. 1975). It rejected the specific argument made here and held that nothing in *Griffin* "intimates that the requirement of invidiously discriminatory animus is limited to private conspiracies". Moreover, the *Lesser* court could perceive "no rational basis" for such an argument. *Id.* Courts relying upon *Lesser's* conclusion have dismissed complaints by plaintiffs who failed to charge that class-based animus inbued a state action conspiracy. *See, Elbert v. Board of Education*, 630 F.2d 509, 514 (7th Cir. 1980), *cert. denied*, 450 U.S. 1031, 101 S.Ct. 1741, 68 L.Ed.2d 226 (1981); *Landrigan v. City of Warwick*, 628 F.2d 736, 739, n. 1 (1st Cir. 1980); *Regan v. Sullivan*, 557 F.2d 300, 307 (2nd Cir. 1977); *Atkins v. Lanning*, 556 F.2d 485, 489 (10th Cir. 1977) (per curiam); *Jordan v. City of Chicago*, 505 F.Supp. 1, 3 (N.D.Ill.1980) and *Duff v. Sherlock*, 432 F.Supp. 423, 429 (E.D. Pa.1977).

■ We accordingly conclude that since plaintiff has failed to allege class-based animus, as is required under § 1985(3), all claims thereupon predicated will be dismissed.[3]

### § 1986

■ In order to state a claim under § 1986 plaintiff must first properly allege a § 1985 claim. *Landrigan v. City of Warwick*, 628 F.2d at 739, n. 1; *Hahn v. Sargent*, 523 F.2d 461, 469–70 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976); *DeFrank v. Pawlosky*, 480 F.Supp. 115, 118, n. 9 (W.D.Pa.1979), *aff'd*, 633 F.2d 209 (3d Cir. 1980).

3. The dismissal of these claims is without prejudice to plaintiff's right to file an amended complaint within twenty (20) days from the date of the order accompanying this memorandum. Plaintiff's brief in opposition to defendants' motion to dismiss asks the Court to consider his complaint as if it alleged national origin discrimination. *See* plaintiff's brief at 7, n. 1. The complaint as now phrased does *not* make such an allegation. Hence, we properly grant the motion, but grant plaintiff leave to file an amended complaint to allege class-based discrimination predicated upon national origin and heritage, if he desires to do so.

In light of our dismissal of the § 1985 claims, we likewise dismiss these claims. However, the dismissal will also be without prejudice. An appropriate order will issue.[4]

4. Plaintiff invites us to deny defendants' motion for purported failure to comply with Local R.Civ.P. 20 (regulating motion practices). Even if we were convinced that a Rule 20 violation had occurred, we would nevertheless decline plaintiff's suggestion because we believe that defendants would simply refile the motions which we have today considered. *Easton Area Joint Sewer Authority v. Bushkill-Lower Lehigh Joint Sewer Authority*, 517 F.Supp. 583, 585 and n. 13 (E.D.Pa.1981).