**Robert A. BLACK, Plaintiff,**

v.

**Frances J. BARNES, et al., Defendants.**

**Civ. A. No. 3:CV–89–1800.**

United States District Court,
M.D. Pennsylvania.

Nov. 4, 1991.

Richard J. Orloski, Allentown, Pa., for plaintiff.

Susan J. Forney, Joseph S. Sabadish, John G. Knorr, III, Office of Atty. Gen., Harrisburg, Pa., Mary E. Butler, Office of Atty. Gen., Philadelphia, Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

## I. INTRODUCTION.

Before the court is defendants' motion for summary judgment, plaintiff's response, and defendants' reply. Before addressing the merits of defendants' motion, the court will set forth the relevant facts.

Defendants in this action served as members of the Pennsylvania Real Estate Commission ("PREC") in 1988. One of the duties of the PREC is to approve or disapprove applications for real estate school directorships. On October 28, 1988, plaintiff Robert A. Black submitted his application and evidence of his credentials to the PREC in order to gain approval as the director of a private real estate school, Metropolitan Real Estate School.

Defendants L'Heureax, Levin, and Lamb were members of the Commission's Education and Examination Committee at that time. They reviewed plaintiff's application and denied him approval as a school director. Plaintiff was notified of the denial by letter dated November 10, 1988. On November 14, 1988, Mr. Black wrote a letter to the PREC indicating his dissatisfac-

**1002**

tion with their decision and requesting a conference for a reevaluation.

On December 6, 1988, plaintiff appeared before the entire PREC, and outlined the reasons for his belief that he possessed the necessary qualifications to be approved for the real estate school directorship. At this point, defendants allege that the Education and Examination Committee of the PREC reviewed and discussed Mr. Black's application, along with his conference comments, and decided that he did not possess sufficient experience in educational supervision and administration to warrant approval as a real estate school director. Plaintiff alleges his application was never reevaluated after the conference. However, both parties agree that Mr. Black was informed by letter on December 14, 1988 that he would have to take four credits worth of course work in the subject area of educational supervision and administration if he wished to qualify for the position of real estate school director.

Mr. Black has brought an action under 42 U.S.C. § 1983 against the then-members of the PREC. His action is premised on the alleged violation of two constitutional rights: due process and equal protection. Plaintiff first argues that defendants' denial of his application for real estate school director was arbitrary and capricious, and thereby violated his right to substantive due process under the fourteenth amendment. Plaintiff's second argument involves an allegation that the PREC found two other applicants for directorships to be lacking experience in the same subject areas as he, but they were granted provisional approval for a specified period while they completed the course work necessary for qualification. Plaintiff argues that the unequal treatment inherent in offering provisional approval to them but not to him violated his fourteenth amendment right to equal protection.

## II. LEGAL DISCUSSION.

### A. *The Standard for Summary Judgment.*

■ The court will consider defendants' motion for summary judgment under the accepted standards for the award of summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The United States Court of Appeals for the Third Circuit has recently summarized those standards in a concise and helpful way:

> Summary judgment may be entered if "the pleadings, depositions[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Equimark Comm. Finance Co. v. C.I.T. Financial Serv. Corp.*, 812 F.2d 141, 144 (3d Cir.1987). If evidence is "merely colorable" or "not significantly probative" summary judgment may be granted. *Anderson*, 106 S.Ct. at 2511; *Equimark*, 812 F.2d at 144. Where the record, taken as a whole, could not "lead a rational trier of fact to find for the nonmoving party, summary judgment is proper." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

*Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987). The parties' burdens in summary judgment may be described in the following way: once the moving party has shown an absence of evidence to support the claims of the nonmoving party, the nonmoving party must do more than simply sit back and rest on the allegations in her complaint. She must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the nonmovant bears the burden of persuasion at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if re-

duced to admissible evidence would be insufficient to carry the nonmovant's burden at trial.

*Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.1987).

■ To establish a § 1983 claim, the plaintiff must establish (1) the presence of conduct that was committed by a person acting under color of state law and (2) that this conduct deprived her of rights, privileges or immunities protected by the Constitution or laws of the United States. *Robb v. City of Philadelphia,* 733 F.2d 286, 290–91 (3d Cir.1984). If plaintiff's evidence in this case, as set out in the pleadings and exhibits attached cannot establish these elements, defendant's summary judgment motion will be granted.

B. *The Relevant Statutes and Regulations.*

The Pennsylvania Real Estate Licensing and Registration Act, Pa.Stat.Ann. tit. 63, §§ 455.101–455.902 (1968 & 1991 Supp.), is the statute which created the PREC, set forth a general description of PREC duties, and set forth the specific qualifications for licensing in the various real estate occupations. Among the PREC's duties is the duty to approve the establishment of private real estate schools, Pa.Stat.Ann. tit. 63, § 455.402 (1968 & 1991 Supp.). The Real Estate Licensing Act gives the PREC the authority to promulgate rules and regulations to effectuate the purposes of the Act. Pa.Stat.Ann. tit. 63, § 455.404 (1991).

With regard to real estate schools, the relevant provision of the Act reads as follows:

**Approval of schools.**

Any school which shall offer or conduct any course or courses of study in real estate shall first obtain approval from, and thereafter abide by the rules and regulations of the commission covering such schools.[1]

Pa.Stat.Ann. tit. 63, § 455.402 (1968 & 1991 Supp.).

Under the authority of the latter statute, the PREC has enacted specific regulations concerning real estate school directors. At the time plaintiff had his experience with the PREC, the Commission was in the process of changing those regulations. In November, 1988, new regulations had been proposed but had not yet been approved. *See* 18 Pa.Bull. No. 37, Sept. 10, 1988, at 4104, 4118, 4123. The new regulations were not approved until February, 1989. *See, e.g.,* source notes accompanying 49 Pa.Code § 35.342 (1989).

In the fall of 1988, the existing PREC regulations required a school seeking PREC approval to present a candidate for director that met the following qualifications:

(i) Be a qualified instructor in real estate.

(ii) Devote at least ½ of the school day to performance of administrative or supervisory duties or both.

(iii) File with the Commission three letters of reference from previous employers setting forth his previous experience in educational administration and supervision, teaching and any other activity related to education and indicate the location and length of service for each.

49 Pa.Code § 35.145(1) (*See* 8 Pa.Bull. No. 36, Sept. 9, 1978, at 2628).

In February, 1989, the PREC adopted its new regulation regarding the approval of real estate school directors. It read as follows:

**Approval of school director.**

(a) A real estate school shall obtain the Commission's approval of its director before commencing operations in this Commonwealth. The applicant ... shall have a combination of experience in teaching, supervision and educational administration to be able to competently administer a real estate education program in areas that include, but are not limited to, the following: evaluation of instructor per-

---

**1.** "School" is defined in the Act as "Any person who conducts classes in real estate subjects but is not a college, university or institute of higher learning duly accredited by the Middle States Association of Colleges and Secondary Schools or equivalent accreditation." Pa.Stat.Ann. tit. 63, § 455.201 (1968 & 1991 Supp.).

formance; evaluation of curriculum and specific course content; analysis of course examinations; and management of school records and school facilities.

(b) The Commission may provisionally approve an otherwise qualified applicant for director who lacks sufficient background in teaching, supervision or educational administration. A provisionally approved director shall obtain the requisite qualifications in the time and manner prescribed by the Commission....

49 Pa.Code § 35.342 (1989).

## C. *The Substantive Due Process Claim.*

### (1)

### The Law.

■ The United States Supreme Court has described the purpose of substantive due process protection in this way:

> by barring certain government actions, regardless of the fairness of the procedures used, it serves to prevent government power from being "used for purposes of oppression."

*Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). The Third Circuit has similarly recognized that "notwithstanding a constitutionally adequate scheme, a plaintiff may maintain a claim of substantive due process violation upon allegations that the government deliberately and arbitrarily abused its power." *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667 (3d Cir.1991).

■ Both substantive and procedural due process protect the individual only against the deprivation of constitutionally protected life, liberty or property interests. The parties here have devoted much attention to the issue of constitutionally protected interests. Plaintiff argues that the terms of the PREC regulation in existence at the time he applied for approval gave him a constitutionally protected property interest in approval as a real estate school director. This "entitlement" was violated when the PREC arbitrarily and capriciously found him unqualified. Defendant asserts that the regulation did not establish this protected property interest.

The question of whether the PREC regulation did create such a protected interest for substantive due process purposes is a difficult one to answer. Both parties have supplied this court with cases that discuss liberty and property interests in a *procedural* due process context. Those cases are largely based on the United States Supreme Court holding in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In *Roth*, the Court defined constitutionally protected property interests as "more than an abstract need or desire" for something. In order for a protected property right to exist, there must be a "legitimate claim of entitlement," created and defined by "existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Other procedural due process cases cited by the parties explore just what types of state law may create an entitlement. Those cases conclude that a state law or regulation expressed in explicitly mandatory language creates a protected liberty or property interest in the object to which it is addressed, *see Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983) and *Greenholtz v. Inmates of Neb. Penal Corr. Complex*, 442 U.S. 1, 11–12, 99 S.Ct. 2100, 2105–2106, 60 L.Ed.2d 668 (1979), but that statutes or regulations which place no substantial limits on the official discretion exercised in making a decision do not create such interests, *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983).

This inquiry is complicated by the fact that the United States Supreme Court has never explicitly addressed whether or to what extent state-created property interests invoke *substantive* due process protection. *See Reich v. Beharry*, 883 F.2d 239, 243 (3d Cir.1989). In *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985), the Supreme Court addressed a substantive due process claim based on an implied entitlement stemming both from a state university's publicly issued pamphlet, and state contract law. The court went straight to

the merits of the plaintiff's arbitrary action allegation, noting that it had decided to "accept the [defendant] University's invitation to 'assume the existence of a constitutionally protectable property right in continued enrollment.'" *Ewing*, 474 U.S. at 223, 106 S.Ct. at 512. Justice Powell, in concurrence, argued that even if the plaintiff did possess such a state-grounded property right, not every such right was entitled to substantive due process protection. Procedural due process interests may be derived from state law, said Powell, but substantive due process rights are created only by the Constitution. *Ewing*, 474 U.S. at 229, 106 S.Ct. at 515 (Powell, J. concurring). Our own circuit has noted Justice Powell's *Ewing* opinion in several instances, and has similarly concluded that what constitutes a property interest in the substantive due process context may differ from the procedural one. *Reich v. Beharry*, 883 F.2d at 243, 244; *Mauriello v. Univ. of Med. & Dentistry of N.J.*, 781 F.2d 46, 52 (3d Cir.), *cert. denied*, 479 U.S. 818, 107 S.Ct. 80, 93 L.Ed.2d 35 (1986). *See also Midnight Sessions*, No. 91–1055, 1109, 1140, at 34 (when court in license-application action found no state-created due process right for procedural due process purposes, it still progressed to a substantive due process examination, noting that defendant did not contend that plaintiff's lack of property interest for procedural purposes barred substantive due process claims). However, the Third Circuit has provided no alternative standard for the substantive due process context.

The regulation applied in this case leaves some, but not total, discretion to the PREC decisionmakers. Were this a procedural due process case, the court's inclination would be to hold that plaintiff did have a state-created property right stemming from the PREC regulation and entitling him to whatever protection procedural due process afforded in the factual context. But, in view of the discussion above, the court will not decide the entitlement issue here. The court will simply assume for purposes of this memorandum that plaintiff did have an entitlement to whatever protection substantive due process afford-

ed in the circumstances, because the court believes that, even if plaintiff has this entitlement, he has not established that the PREC acted in an arbitrary and capricious manner.

When a law seeks to deprive a plaintiff of a fundamental right, courts examine the action using a strict scrutiny standard, searching for a compelling or overriding state interest to which the law is necessary. R. Rotunda, J. Nowak & J. Young, 2 Treatise on Constitutional Law § 15.4, at 59–60 (1986 & 1991 Supp.). However, when no such right is involved, as with general economic or social welfare legislation, courts merely use a rational relationship test. *Id.* at 60. They inquire whether the law at issue is rationally related to a legitimate government interest. *See id.; Midnight Sessions*, No. 91–1055, 1109, 1140 at 35–36; *Malmed v. Thornburgh*, 621 F.2d 565, 575–76 (3d Cir.), *cert. denied*, 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980).

In this case, there is no fundamental constitutional right involved. At issue is an economic property right. The challenged state action here is not the enactment of a facially problematic statute, but the allegedly arbitrary application of an evaluative administrative regulation.

When an evaluative administrative decision, rather than a law, is at issue the substantive due process examination is a more difficult one. One expert notes the following relevant example and principles:

> A more difficult problem is presented ... when a rulemaking body ... delegates to a government agent or agency the power to make individualized determinations regarding the treatment of individual persons. In these cases, there is no "rule" for courts to test with a substantive due process standard, although a court may be asked to review an administrative ... decision.

> For example, a school board may establish a policy requiring the principal of a public high school to evaluate the teaching performance of untenured high school teachers and to refrain from renewing the contract of any teacher who

is found to be a poor or inadequate classroom teacher....

A court may be asked to review the substance of the principal's decision [not to renew contract of a teacher believed inadequate].... In this situation, the rationality standard is difficult to apply because there is no clear rule to be tested, except for the legislative decision that principals should have [this] power....

Judges should not feel free to substitute their judgment regarding the quality of teachers for that of an administrative agent or agency who has been delegated power in this area. On the other hand, the teacher should not be subjected to arbitrary and capricious decisionmaking. It may be that the rationality standard can be adapted to this situation by requiring that the court which reviews the principal's decision determine only that there are some facts that could support the principal's decision and that the decision is not totally arbitrary and capricious. So long as there is some factual basis for the exercise of the professional's judgment, the judiciary should not overturn that judgment.

R. Rotunda, J. Nowak & J. Young, 2 Treatise on Constitutional Law, § 15.4, 1991 Supp. at 8.

The United States Supreme Court followed almost exactly this same approach in *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). In that case, the plaintiff was an enrollee in a six year program of study leading to both graduate and a medical degrees. In order to make it into the final two years of the program, students were required to pass the NBME, a two day national standardized test. *Id.* at 215, 106 S.Ct. at 508. A pamphlet issued by the school noted that students were given the opportunity to retake the exam if they failed. *Id.* at 219, 106 S.Ct. at 510. When Mr. Ewing failed the NBME, the school Promotion Board voted unanimously to drop him from the program. *Id.* at 216, 106 S.Ct. at 508. In response to a protest by Mr. Ewing, the Board gave him an opportunity to appear before them and explain why he should not be dropped. *Id.* After reconsideration, the Board reaffirmed its earlier decision. *Id.*

In his § 1983 action, Ewing presented statistics showing it was common for students to be allowed to retake the NBME, and evidence showing that other students with even less proficiency than he were allowed to retake it. In addition, he offered both the pamphlet and Board member testimony as additional evidence showing that students were routinely allowed to have a second chance at the exam. He lost at trial.

In addressing Ewing's claim that the University had misjudged his fitness for the program, the Court pointed to a record demonstrating no bad faith on the part of the defendant, and conscientious and deliberate decisionmaking on the part of the faculty Board. The Court observed that

when judges are asked to review the substance of a genuinely academic decision ... they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the ... committee responsible did not actually exercise professional judgment.

*Id.* at 225, 106 S.Ct. at 513.

The Third Circuit has followed a similar approach in addressing evaluative administrative decisionmaking. In a recent § 1983 case alleging, *inter alia,* a substantive due process violation in the refusal to grant a dance hall license, the Third Circuit noted that

federal courts ... will largely defer to legislative judgments rather than substitute their own judgment in cases involving land use policy because they will not "undermine the legitimacy of democratic decisionmaking unless the local legislative judgment is without a plausible rational basis."

*Midnight Sessions,* No. 91–1055, 1109, 1140, at 34 (quoting *Pace Resources Inc. v. Shrewsbury Township,* 808 F.2d 1023, 1031 (3d Cir.), *cert. denied,* 482 U.S. 906, 107

S.Ct. 2482, 96 L.Ed.2d 375 (1987)). However, the Third Circuit noted that "allegations that the government's actions in a particular case were motivated by bias, bad faith, or improper motive, such as partisan political reasons or personal reasons unrelated to the merits of the plaintiff's application, may support a finding of substantive due process violation." *Id.* at 34–35. *See also Bello v. Walker,* 840 F.2d 1124, 1127, 1129 (3d Cir.), *cert. denied,* 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 107 (1988) (plaintiff's evidence showed due process violation where council members opposed to multi-unit housing and other council members with animosity toward plaintiff's employee interfered with building plan approval process by pressuring code officer to deny permits, injecting partisan political/personal factors unrelated to merits of application and legislative objective sought to be accomplished); *Pace Resources, Inc. v. Shrewsbury Township,* 808 F.2d 1023, 1035–37 (3d Cir.), *cert. denied,* 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987) (plaintiff had no substantive due process claim where township decisionmakers could have had rational reasons for decisions first approving development plan, then disapproving final plans, then rezoning land for agriculture; court deferred "to legislative judgment unless it can have no rational, legitimate foundation"); *Winsett v. McGinnes,* 617 F.2d 996, 1007–1008 (3d Cir. 1980), *cert. denied sub nom. Anderson v. Winsett,* 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981) (prisoner's evidence showed due process violation where decisions denying work release were admittedly based on public outcry and letters and pressure from state senators rather than normally used criteria relating to statutory policy and purpose of the institutional program) *Cf. Amsden v. Moran,* 904 F.2d 748, 757 (1st Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991) (regulatory board does not violate constitutional due process requirements merely by making decisions "for erroneous reasons" or by making "demands which arguably exceed its authority"); *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 833 (1st Cir.), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982) (conventional administrative disputes between developers and agencies over rejection of development plans do not implicate the federal Constitution, absent fundamental procedural irregularity, racial animus or the like).

(2)

This Case.

Plaintiff alleges that in its application of the regulation regarding school director approval the PREC so misjudged plaintiff's qualifications that its action was arbitrary and capricious.

The court must note here that it is puzzled by defendants' citation to the regulation at 49 Pa.Code § 35.342, which was approved in February, 1989, well after plaintiff's contact with the PREC. Perhaps the newer regulation merely codified the prior practical experience of the PREC. Although this is likely, it has not been alleged by defendants' counsel, and is no excuse for not directly addressing the regulation that existed in the fall of 1988. The court has examined and will continue to refer to the relevant regulation in 49 Pa. Code § 35.145, as it existed at the time of plaintiff's application.

Section 35.145 of the Pennsylvania Code, the relevant regulation at the time of plaintiff's application, was quoted above at Section II(B) of this memorandum. It included a requirement that the applicant submit letters of reference to the PREC detailing experience in educational administration and supervision, teaching and any other activity related to education, and indicating the location and length of service for each. From this latter requirement, which evinces a concern for the type, location and length of each type of occupational experience required, one may infer that approval by the PREC was not automatic, that there was allowable discretion remaining with the PREC with regard to the approval decision.

Hence, while the new regulation does express the discretion of the PREC more directly by saying that the applicant must have a combination of experience sufficient

to competently administer a real estate education program (a decision left to the PREC), the discretion remaining in the PREC *is* evident from the older regulation as well. This was not, as plaintiff implicitly alleges, a case where the PREC applied a new regulation involving discretion to plaintiff prior to its passage.

In the fall of 1988, the relevant regulation required experience for approval as real estate director to have been in the areas of educational administration and supervision, teaching and any other activity related to education. 49 Pa.Code § 35.145, 8 Pa.Bull. 36, Sept. 9, 1978, at 2538. The newer regulation merely expands upon this requirement, citing a combination of experience in teaching, supervision and educational administration sufficient to be able to administer a real estate education program, and giving examples of skills derived from such experience, such as evaluation of instructor performance; evaluation of curriculum, analysis of course examinations, and management of school records and facilities. 49 Pa.Code § 35.342 (1989).

There is no indication that the PREC judged Mr. Black's qualifications on any basis other than that provided for in the regulation extant at the time: his experience in educational administration and supervision, teaching, and any other education-related field. In fact, the communications from the PREC to plaintiff on November 10, 1988, and December 14, 1988, explicitly state that Mr. Black had been found deficient in the areas of educational supervision and administration.

Plaintiff argues that his qualifications for approval as a real estate director were so obvious and overwhelming that when the PREC decided he was not qualified for the position, it could not possibly have been furthering a legitimate state interest. In essence, plaintiff argues that the PREC so misapplied the appropriate regulation that

its members could not possibly have been furthering the legislative purpose underlying the establishment of the PREC in general and the regulation in particular. In addition, plaintiff argues that when the PREC denied him approval, it was acting unlawfully to further an agenda of channelling real estate students to non-private real estate schools.

Both parties have generally agreed on the legislative purpose to be inferred from the provisions of the Real Estate Licensing and Registration Act, Pa.Stat.Ann. tit. 63, §§ 455.101–455.902 (1968 & 1991 Supp.), which established the PREC: to regulate the real estate profession in order to protect the public, by requiring that those in the occupation meet ethical standards and substantive qualifications. Here, defendant plausibly infers the further purpose behind the school director approval regulation as protection of the interests of students who invest time, money and effort in attending real estate schools, and protection of the interests of the public in engaging the services of properly trained real estate professionals.

Plaintiff points to the fact that he was a school board member for a year, and to his letters of recommendation to show that he possessed "vast" experience in educational administration and supervision. However, the court believes that the PREC acted to further the above legitimate state interests in making its determination in plaintiff's case.

While plaintiff's letters of reference are clearly laudatory, they do not strongly demonstrate administrative and supervision experience: they document observations of his teaching ability, *see* letters by Mr. Scott and Ms. Markulics,[2] his working knowledge of real estate brokerage, sales and financing and his communicative skills as a teacher, *see* letter by Mr. Kratz,[3] his perform-

---

**2.** Appended as Exhibits C and F to plaintiff's brief in opposition to summary judgment. Mr. Scott later corresponded with the PREC in an addendum to his letter of reference in which he said that Mr. Black was sufficiently involved in school administration to demonstrate competency in administration. There was no further

description or detail regarding this issue. It is rational to believe that the PREC would not consider this strong evidence of educational administration skills on Mr. Black's part.

**3.** Exhibit D, plaintiff's brief in opposition to summary judgment. Mr. Kratz' professional experience with the plaintiff apparently resulted

ance as an Air Force officer, *see* letter by Mr. O'Connell,[4] and his skill at planning and budgeting an educational investment seminar, *see* letter by Mr. Larmer.[5] After reading these letters, the PREC could rationally have concluded that Mr. Black did not have adequate experience in the area of educational supervision and administration to properly run a real estate school such that students' investment and the public trust would be well served.

While Mr. Black's experience as a school board member did constitute educational administrative and supervision experience [6], it cannot be denied that (1) the position served as Mr. Black's only real educational supervision and administration experience apart from teaching, (2) it accounted for only one year's work experience out of a nearly twenty year career, and had occurred ten years prior to his application, (3) the PREC could rationally have believed that the position was not really analogous to the real estate directorship in responsibilities,[7] and (4) the position was not in the field of real estate. For all of these reasons, the PREC could rationally have concluded that Mr. Black's term as a school board member did not provide him with sufficient experience in educational supervision and administration to run a real estate school in a manner sufficient to protect the interests of both students and the public.

Given the legal precedents described above, the court believes that the PREC decision was not arbitrary and capricious. Plaintiff has presented absolutely no evidence that the PREC considered any factors other than those outlined in the regulation regarding the approval of school directors extant at the time, factors which are rationally related to the legislative purpose underlying such decisions. There is no indication that their decision was not both logical and deliberative. As this court has demonstrated, there are facts regarding Mr. Black's qualifications which could plausibly support a conclusion that he was unqualified. There is no evidence to suggest that the PREC departed from accepted norms of decisionmaking in exercising its professional judgment in an evaluative context. Plaintiff disagrees with the PREC's conclusion, but, even assuming the PREC's conclusion was erroneous, it would at most be a misapplication of state law, and not a constitutional violation.

There is no evidence here that bias, bad faith or improper motives played any part in the PREC's decision that Mr. Black was unqualified. Plaintiff has argued that the PREC's decision was made in an effort to further a PREC agenda to extinguish private real estate schools, and favor public schools; this makes little sense to the court. The court has no idea why the PREC would be interested in closing such private schools in favor of public ones that the PREC has no authority to even regulate. Plaintiff's argument here is even less persuasive in light of the fact that he has offered absolutely no evidence to support it.

Given the above, defendants' motion for summary judgment on the substantive due process claim will be granted.

### D. *The Equal Protection Claim.*

#### (1)

#### The Law.

■ Mr. Black alleges that his rights to equal protection under the law were violat-

---

from his supervision of Mr. Black while Mr. Black taught at a real estate school. While he notes a high level of administrative skill on the part of Mr. Black, he does not describe or detail how or where or what he observed to demonstrate this. While teachers do perform some administrative duties, they certainly do not hold an administrative position. It is rational to believe that the PREC would not consider this statement to be strong evidence of administrative skill on Mr. Black's part.

4. Exhibit E, plaintiff's brief in opposition to summary judgment.

5. Exhibit G, plaintiff's brief in opposition to summary judgment.

6. For some reason, defendants have refused to even address this experience of Mr. Black. None of their pleadings even mention it.

7. The PREC could rationally have believed that school board members are active in making broader policy decisions, rather than the close daily supervision of teachers and staff and the daily administrative paperwork that might be involved in being a real estate director.

ed through the PREC's unequal treatment of applicants in the administration of the director approval regulation. Specifically, plaintiff points to two director candidates who lacked sufficient educational administrative and supervisory experience, but were given provisional approval for a limited period while they pursued the necessary course work to complete their qualifications. Plaintiff was not offered this provisional approval.

Plaintiff's only evidence on this point consists of two letters to the individuals, Mr. Haber and Ms. Smith,[8] letters which merely state that provisional approval was granted, without discussing the specific experience of the individuals or the considerations involved in the grant. (In addition, plaintiff has submitted letters which show that various other applicants including Mr. Lutz, Mr. Petrone, Ms. LeBarre, Mr. Racciatti, Mr. LoDolce, and Mr. Dellegrotto were also found unqualified because they lacked educational administrative and supervision experience, but were not offered provisional approval. *See* Exhibits M, N, O, P, Q, R, plaintiff's brief.)

The equal protection rubric protects against discriminatory treatment of similarly situated persons. R. Rotunda, J. Nowak & J. Young, 2 Treatise on Constitutional Law § 18.2, at 318 (1986 & 1991 Supp.). Mr. Black has not shown to this court's satisfaction that any of the individuals listed above are similarly situated with regard to their qualifications for a directorship position. There is no evidence as to their qualifications; for all this court knows, they may have possessed differing degrees of experience in administration and supervision. But, even assuming the submitted letters are sufficient to show the individuals *were* similarly situated, plaintiff has shown no evidence of a pattern of discriminatory classification, and no evidence of any discriminatory intent.

There is a noted United States Supreme Court case, which neither party has cited, but which has become an oft-cited authority on the issue of equal protection applied in an administrative decisionmaking con-

text: the case is *Snowden v. Hughes*, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944). In that case, plaintiff was one of several Republican primary candidates for state representative from a particular district in Illinois. *Id.* at 3, 64 S.Ct. at 398. In this particular election, it had been arranged that two candidates were to be nominated from the Republican Party and one from the Democratic Party. Only three representatives were to be elected in this election, so each Republican primary winner could count on election. *Id.* After the primary voting, the county Board was to complete certificates of nomination for the winners to be included on the ballot. *Id.*

The primary voting ended, and plaintiff had received the second highest number of votes for the Republican nominations. *Id.* State law required that the candidates with the highest number of votes be nominated. *Id.* The Board certified the vote count, but only filed certification for one Republican nominee from the district, excluding the plaintiff. *Id.* at 4, 64 S.Ct. at 399. The plaintiff filed suit; one of his allegations was that the Board's failure to file the certificate had deprived him of the nomination and election, denying him equal protection of the laws.

The Supreme Court denied the plaintiff's equal protection claim on the grounds that he had not disclosed any discriminatory purpose or consequence of the allegedly improper action, and that plaintiff had not shown that defendant's conduct with regard to the plaintiff was affected or related to the certification of any other nominee. *Id.* at 10, 64 S.Ct. at 402. The case is best known for these comments by the Court:

> The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. This may appear on the face of the action taken ... or it may only be shown by extrinsic evidence showing a discriminatory design to favor

---

8. *See* Exhibits L–6, and N–1, plaintiff's brief in opposition to summary judgment.

one individual or class over another, not to be inferred from the action itself.... But a discriminatory purpose is not presumed ... there must be a showing of "clear and intentional discrimination."

*Id.* at 8, 64 S.Ct. at 401. Without a showing of *purposeful* discrimination, the Court concluded, plaintiff's problems remained a matter of state, and not federal concern.

Various federal courts have cited the *Snowden* decision. *Petrone v. City of Reading*, 541 F.Supp. 735 (E.D.Pa.1982) bears some resemblance to the case at bar. In *Petrone*, the plaintiff was the purchaser of a pizza business franchise, who submitted building plans to the city for cosmetic alteration of his building. *Id.* at 736. The city took ten weeks instead of the normal seven days to approve the plans. *Id.* Plaintiff made his alterations and got the necessary approval from fire and building inspection authorities, but the city refused to approve an occupancy permit, without additional alterations being made. *Id.* The business' opening was delayed for eight months, and plaintiff eventually lost the franchise.

In the meantime, a competitor pizza business opened next door to the plaintiff. *Id.* at 737. The city allowed it to renovate without obtaining the myriad of licenses and inspection approvals that were required of plaintiff before construction. *Id.* In addition, the city allowed the competitor to conduct business without an occupancy permit. *Id.*

When plaintiff complained, the city reacted by passing a resolution requiring that the competitor bring its business up to code. *Id.* When this did not occur, the city passed a second resolution containing a scheduled timetable for code compliance; the schedule was never enforced, and at the time of the litigation the competitor's building was still not up to code. *Id.*

The *Petrone* court denied the plaintiff's equal protection claim, citing *Snowden*. Plaintiff had shown no actual discriminatory purpose or pattern to the city's unequal application of its regulations: he had failed

to demonstrate that the strict code enforcement he suffered was

> in any way "affected or related to" the more lax code enforcement accorded his competitor. In fact, the complained-of conduct antedates the entry of plaintiff's competitor into the business by almost three months. As such, it seems unlikely that plaintiff could ... allege that the strict enforcement which he suffered was "affected by" the existence of this competitor.

*Id.* at 739. Other courts have followed a similar approach. *E. & T. Realty v. Strickland*, 830 F.2d 1107, 1112–1113 (11th Cir. 1987), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988) (plaintiff's showing of arbitrary and irrational difference between results of two particular applications of facially neutral statute not enough to show violation of equal protection. If classification challenged was created on face of a statute, plaintiffs could prevail by showing no rational relationship to state purpose, but with neutral legislation unequally applied, no violation would be shown absent proof of discriminatory intent); *Northeast Jet Center, Ltd. v. LeHigh–Northampton Airport Authority*, 767 F.Supp. 672, 675, 677–78 (E.D.Pa.1991) (court found plaintiff airport maintenance company met *Snowden* test on claim of equal protection stemming from Authority's application of existing regulations to it and not to any others similarly situated. The evidence showed particular incidents of defamation, interference with business relationships, interference with license approvals, and defamatory statements made by the Authority, all done with motive of forcing plaintiff to sell its business to the Authority at depressed price.)

### (2)

#### This Case.

At the time of plaintiff's application (and the applications of the other individuals listed by plaintiff), provisional approval was not an option explicitly offered by the relevant regulation administered by the PREC.[9] The PREC found all eight candi-

---

**9.** It is an option under the current regulation. *See* 49 Pa.Code § 35.342(b) (1989).

dates for director listed by plaintiff to be unqualified for the real estate school director position. However, it temporarily relieved two of the candidates from complying with the regulatorily required qualifications by granting provisional approval.

Plaintiff has submitted no evidence that the PREC acted to discriminatorily classify candidates, that its decisions followed any discriminatory pattern, or that the PREC acted with any type of discriminatory purpose or intent. Plaintiff has offered no evidence or explanation relating the failure of the PREC to offer provisional approval to himself and others to the PREC's offer of such approval to the two listed candidates.[10] Plaintiff has not met the *Snowden* test. He has simply submitted a list of applicants who were deficient in qualifications: two of them were granted provisional approval, and six of them were not offered that approval.

For the above reasons, summary judgment on the equal protection claim will be granted to defendants.

10. Plaintiff's affidavit alleges that the denial of his application was a part of an attempt to repeal the establishment of private real estate schools by imposing unreasonable standards on applicants as demonstrated by the list of eight candidates and their fates. This is not argued in plaintiff's brief. However, as the court noted earlier in this memorandum, the allegation makes little sense (especially as some candidates were approved), and is supported by no evidence.